1                    UNITED STATES DISTRICT COURT

2                     DISTRICT OF MASSACHUSETTS

3                              No. 1:12-cr-40026-WGY

4

5

6   UNITED STATES OF AMERICA

7

    vs.

8

9   JOHN J. O'BRIEN, et al

10

11

12                         * * * * * * * *

13

14                     For Hearing Before:
                       Judge William G. Young

15

16                   Final Pretrial Conference

17

18                   United States District Court
                     District of Massachusetts (Boston)
                     One Courthouse Way

19                   Boston, Massachusetts 02210
                     Friday, May 2, 2014

20

21                         * * * * * * *

22

              REPORTER: RICHARD H. ROMANOW, RPR

23                     Official Court Reporter
                   United States District Court

24       One Courthouse Way, Room 5510, Boston, MA 02210
                     bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3   FRED M. WYSHAK, JR., ESQ.
     KARIN M. BELL, ESQ.
 4   ROBERT A. FISHER, ESQ.
         United States Attorney's Office
 5       J. Joseph Moakley U.S. Courthouse
         1 Courthouse Way, Suite 9200
 6       Boston, Massachusetts 02210
         (617) 748-3954
 7       Email: Fred.wyshak@usdoj.gov
         For the United States
 8

 9   STYLIANUS SINNIS, ESQ.
     WILLIAM W. FICK, ESQ.
10   CHRISTINE DeMASO, ESQ.
         Federal Public Defender Office
11       District of Massachusetts
         51 Sleeper Street, 5th Floor
12       Boston, Massachusetts 02210
         Email: stellio_sinnis@fd.org
13       For John J. O'Brien

14
     JEFFREY A. DENNER, ESQ.
15   R. BRADFORD BAILEY, ESQ.
         Denner Pellegrino, LLP
16       Four Longfellow Place, Suite 3501
         Boston, Massachusetts 02114
17       Email: Jdenner@dennerpellegrino.com
         For Elizabeth V. Tavares
18

19   JOHN A. AMABILE, ESQ.
     JAMES C. BRADBURY, ESQ.
20       Amabile & Burkly, P.C.
         380 Pleasant Street
21       Brockton, Massachusetts 02401
         Email: John.amabile@amabileburkly.com
22       For William H. Burke, III

23

24

25
```

```
1                  P R O C E E D I N G S
2             (Begins, 10:00 a.m.)
3             THE CLERK:  Criminal Case 12-40026, the United
4    States of America vs. John J. O'Brien, et al.
5             THE COURT:  Pay no attention to this stuff.  I
6    am sitting virtually in Memphis starting at 11:00 on a
7    civil case.
8         All right.  We have a lot to do and not too much
9    time to do it.  I want to proceed in the following
10   order.  I'm delighted to see that you now estimate that
11   the case, as I framed it, will take no more than two
12   months to try.  I'm hopeful that we can reduce that
13   still further by doing some work with respect to
14   documents.
15        In one respect an issue over documents has been
16   fully briefed and I can address that, but Ms. Gaudet
17   said something about you might agree and that would save
18   some time with a witness or something, and that's about
19   the level of generality that I got the message.
20        To what is reference made?
21             MR. WYSHAK:  Well, your Honor, I think we
22   submitted to the Court the exhibit list draft with the
23   agreed --
24             THE COURT:  And I'm very grateful.
25             MR. WYSHAK:  -- with the agreed-upon exhibits.
```

1          THE COURT:  And they're in green?

2          MR. WYSHAK:  Yes.

3          THE COURT:  That's helpful.

4          MR. WYSHAK:  And I think a large number of

5  exhibits come in which are from Senator Murray's office

6  which is the subject of the motion and the hearing that

7  we would like to have.

8          THE COURT:  Well, I don't propose to give it a

9  hearing, but I'm prepared to rule on it.  Now, put that

10  aside for a moment.  Well, let's come to this.

11      As I looked at your exhibit list -- and put aside

12  anything out of the Senate President's office, many of

13  the -- oh, well, perhaps I'll -- how many of the

14  exhibits not agreed to come out of the files of the

15  Commissioner of Probation or the Probation Department of

16  the Massachusetts trial court?

17          MR. WYSHAK:  I think the bulk of those

18  documents have been agreed to.

19          THE COURT:  Okay, that's helpful.  Well, then

20  let me face right up to it.  The motion to admit the

21  exhibits from Senator Murray's office is ruled upon as

22  follows.

23      Having carefully reviewed the briefing, the Court

24  is prepared to accept that all of those documents -- and

25  I thank you for the copy of them, are authentic, they

1    are not business records.  Now, perhaps some of them can

2    come in for other reasons because they are ruled

3    authentic, but they're not business records.  So that

4    takes care of that.

5         What -- is that the only issue on exhibits -- the

6    only way on exhibits I can be helpful?  I thought maybe

7    we could agree as to -- just take the first page here.

8    For instance, look at 1.9, "Lawton, Final Round

9    Interview Scheduled with Handwritten Scores and Ranks,"

10   and the 1.9 and 1.10.  Where do those documents come

11   from?

12            MR. WYSHAK:  They come from the AOTC's slash

13   OCP files.

14            THE COURT:  What does that mean?

15            MR. WYSHAK:  In other words it's a copy of --

16   it's actually a copy of a business record --

17            THE COURT:  You're characterizing it.  Where

18   did it come from?

19            MR. WYSHAK:  It came from the files of OCP and

20   AOTC.

21            THE COURT:  What's "OCP"?

22            MR. WYSHAK:  I'm sorry, the "Office of The

23   Commissioner of Probation" and --

24            THE COURT:  And what's "AOTC"?

25            MR. WYSHAK:  The "Administrative Office of the

```
 1    Trial Court."
 2              THE COURT:  All right.  Now, as to all of
 3    those types of documents, my goal here is always to
 4    simplify and to shorten things down.  As to those types
 5    of documents in federal court now, I don't see why you
 6    don't give me a packet of those documents and with an
 7    appropriate certification by the custodian in the Office
 8    of the Commissioner of Probation, that's their business
 9    records, and then if that looks regular, in they all
10    come.  The limitation being relevance.  I --
11              MR. WYSHAK:  I think the defendants object to
12    those particular items now because they have handwritten
13    notations on them.
14              THE COURT:  And you've flagged that before?
15              MR. WYSHAK:  Yes.
16              THE COURT:  And -- well, I will tell you.  If
17    you give me a packet of those documents with an
18    appropriate certification of an appropriate custodian
19    under the Federal Rules of Evidence in the Office of the
20    Commissioner of Probation, then the defense is going to
21    have to say that something is irregular about them.  The
22    fact that they have handwritten notations within the
23    files of the Commissioner of Probation doesn't amount to
24    very much in terms of irregularity, lots of files have
25    handwritten notations.  So I would suppose that I would
```

1    be in a position to rule that they're all admissible.

2          Now, there may be internal hearsay in a

3    handwritten notation or the like, but the likelihood is

4    you're going to get all of those in, and also you'll get

5    in all the ones from the Administrative Office of the

6    Trial Court if we have an appropriate officer giving the

7    appropriate affidavit from the Administrative Office of

8    the Trial Court.  Now doesn't that make sense?

9            MR. WYSHAK:  Yes, your Honor, we can make that

10   submission to the Court.  The Administrative Office of

11   the Trial Court is the keeper of the records for the

12   Officer of the Commissioner of Probation, so they will

13   be able to provide that certification.

14           THE COURT:  If that's true, then that's fine.

15        Let me go to the defense.  Doesn't that make

16   sense?  Yes, Mr. Amabile.

17           MR. AMABILE:  The first thing I want to say is

18   that it doesn't make sense because I think it's going to

19   end up violating my client's right to confront his

20   accuser to let in these handwritten notes without any

21   reference or any testimony about who wrote the notes and

22   when the notes were written, the records themselves, and

23   we've stipulated to hundreds of documents --

24           THE COURT:  I appreciate it.

25           MR. AMABILE:  -- the typed-up records are

1   business records, the notations, it isn't clear that

2   they are and that they're regularly and usually kept in

3   the ordinary course of business.

4           THE COURT:  Well -- but the affidavit of the

5   appropriate custodian should address that.

6       Now, believe me, I'm going to be assiduous in

7   protecting the constitutional rights of all parties, but

8   save for a document-by-document objection, which I'll

9   entertain if I have to, if the government gives me such

10  a list on Monday and it makes sense to me, then they're

11  all provisionally admitted so long as they come from

12  the -- those two sources.  So that will save us some

13  time.

14      Now what other -- the records from the Senate

15  President's office, oh, they're authentic, I have no --

16  there's no real challenge to that, but I'm not letting

17  them in as business records.  So for now they're out.

18          Mr. Sinnis?

19          MR. SINNIS:  I just wanted to alert your Honor

20  to one -- before we move to different classes of

21  documents, there's documents that are in this same class

22  that your Honor has taken up which are the applications

23  and scoring sheets and files from the Office of the

24  Commissioner of Probation and from the Administrative

25  Office of the Trial Court that are housed in the

1    Williams building.  There's roughly a hundred boxes that

2    the government produced in discovery that are not listed

3    here as exhibits.

4              THE COURT:  Because the government doesn't

5    want them.

6              MR. SINNIS:  That's correct.  That we -- well,

7    there's a couple of points with those documents -- one

8    is just logistically, which I need your Honor to

9    address, and secondly is maybe more substantively, but

10   there are many documents in those files that we intend

11   to use on cross-examination, not as -- in our case in

12   chief, not as exhibits, but on cross-examination of

13   certain witnesses.  So there's the physical issue of

14   making those documents available here in the courtroom

15   and there are literally 100 boxes -- a hundred boxes.

16        We can probably say, "Okay, next week" -- or every

17   Friday we're in court, "These are the range of boxes

18   that we need access to," but we need them to be

19   physically brought here by the government because we

20   have never been given unfettered access to those.  Any

21   time we have gone in there to look at --

22             THE COURT:  Well, please, argument is not

23   helpful, but the logistics is.  That sounds like a

24   workable plan, you tell them what they're to bring over,

25   they bring it over, you have access to it.

1          MR. SINNIS:  Correct.

2          THE COURT:  And again I know you don't have to

3    disclose your defense here, but what I ruled for the

4    government and indeed the affidavit -- and I'll say this

5    to Mr. Wyshak and the government, the affidavit of the

6    custodian had better include all the hundred boxes so

7    that I know that I've got what the custodian says is

8    data prepared in the ordinary course of business.

9          Now, in terms of relevance, which -- fine, it's an

10   exception to the rule against hearsay, but relevance is

11   always the significant criteria, and in terms of

12   relevance, any of these hires, either within the statute

13   of limitations, which have separate counts, beyond the

14   statute of limitations, which are predicate acts, those

15   are all relevant, it seems to me.  Had this case been

16   framed more narrowly, I would be disposed to allow the

17   government some leeway to show pattern and practice, but

18   since they've got so many counts, that seems to me to

19   establish a pattern or practice.  So I propose to hold

20   the government to the people that they've alleged in the

21   order that I said this case would be tried.

22         Now the defense, I can see reasons to go outside

23   that, but just be aware that to the extent you go

24   outside that, the government, if it takes issue with

25   whatever is sought to be raised, has a like reason to

1    come back at you.  Are there -- so that's business

2    records now from that source.

3        Are there other classes of documents that I could

4    rule on?

5            MR. WYSHAK:  Your Honor, if I could just

6    address that last point because I think that, um, the

7    keeper of the records from AOTC, it is not going to be

8    able to authenticate all of the tens of thousands of

9    documents that are over in the Williams building.  You

10   know, we have provided specific hiring files to AOTC

11   that they have gone back and checked to make sure that

12   those are their records, that it maintained copies of

13   everything that was produced, and they'd spent time to

14   be able to authenticate those files.

15           THE COURT:  Mr. Wyshak, I appreciate that, I

16   appreciate that, and I'm not requiring them to do

17   anything beyond what they can do, and so if I drafted

18   that overbroadly, so I did.  I will tell you that the

19   documents are the documents and if I rule I'll preserve

20   the defendants' confrontation rights, believe me, but if

21   I let these in under the rubric that I just described,

22   when the defense picks something out of this box, if it

23   looks like the same ilk of document, I'm going to think

24   to myself, "It's authentic," one, because that's where

25   it came from, that's where that hundreds of boxes came

```
 1    from, and, two, "I don't see why," but you may be able
 2    to point it out, "that there's some particular flaw
 3    there."  But the likelihood is that I'm going to admit
 4    it and I'm going to admit it as a business record
 5    because I've allowed you to do that.  I'm not asking
 6    anyone to say under oath by affidavit anything they
 7    cannot say.  So you can file a more limited affidavit.
 8    It gets your documents in.  But I'm not wasting much
 9    time on admitting their documents if relevant.
10         Are there other classes of documents that I can
11    assist on?
12              MR. WYSHAK:  Your Honor, I think that there
13    are a series of letters that go back and forth between
14    the CJAM, Judge Mulligan, and Mr. O'Brien that are all
15    part of Exhibit Number 40.
16              THE COURT:  Thank you.
17              MR. WYSHAK:  They run from 40.1 through 40.60.
18              THE COURT:  So as to those, um, you're -- I'll
19    jump to it.  The -- well, certainly all the letters from
20    O'Brien are admissions and your argument, I take it,
21    subject to my independent review -- and this just
22    happened in the last conspiracy case that I sat on, that
23    I didn't come out and it's a finding of fact where the
24    government came out.  Now that was a different type of
25    case, but I follow *Petrozziello* and *Campaglia*, as I
```

```
1   must, and so your argument is that all the O'Brien
2   letters are statements in furtherance of the conspiracy,
3   right?
4              MR. WYSHAK:  Or admissions of the defendant.
5              THE COURT:  Well, if they're admissions of
6   O'Brien, they're admitted only to O'Brien.
7              MR. WYSHAK:  Right.
8              THE COURT:  Now, do you want me to admit them
9   without putting limiting instructions on it?  If so,
10  they have to be statements made during and in
11  furtherance of the conspiracy.  Is that the government's
12  position?
13             MR. WYSHAK:  Yes, your Honor.
14             THE COURT:  Okay, fine.  So I would think,
15  subject to hearing the defense here, that if they're
16  authentic, then all of the O'Brien letters come in.
17             MR. SINNIS:  The only thing I would say --
18  again some of them have kind of double hearsay in them,
19  a comment like -- it's hard -- I think you're generally
20  right that we wouldn't have an objection to them, but I
21  guess I just want to, on a rolling basis, if something
22  comes in that Mr. O'Brien is saying where "Judge so and
23  so told him something else and that's in a letter to
24  Judge Mulligan," you know, then there are some double
25  hearsay issues in some of these.
```

1          THE COURT:  There is, Mr. Sinnis, and sort of

2    what I've put on the government with respect to your

3    documents, I take what you say in good part.  I can't

4    shift the burden to you and I don't, but it's like

5    you've got to bring that to my attention because

6    otherwise they're in and I'll first vet my own findings

7    when the government closes its case.

8          MR. SINNIS:  Right, and similarly -- we're

9    obviously reserving relevancy objections, but if some of

10   these letters are not relevant to the conspiracy

11   charged, I've got to be able to raise it at the time

12   that they're seeking their admission.

13          THE COURT:  And that's perfectly acceptable,

14   but I'm going to have them marked as exhibits with

15   numbers, that's my point, because that will save time.

16          MR. SINNIS:  Okay.

17          THE COURT:  Now, how are you going to get the

18   Mulligan letters to O'Brien?

19          MR. WYSHAK:  Well, most of this

20   correspondence, your Honor, involves Judge Mulligan

21   writing a letter to Mr. O'Brien or vice-versa,

22   Mr. O'Brien writing a letter to Judge Mulligan, and

23   either one of them responding to the letter.  So clearly

24   this is like a conversation between Judge Mulligan and

25   Mr. O'Brien --

1           THE COURT:  So you're invoking the doctrine of

2    completeness?

3           MR. WYSHAK:  Yes, there's no way to give

4    context to O'Brien's letters.

5           THE COURT:  But you'll accept a limiting

6    instruction on what Mulligan may have said, not for the

7    truth, but so we understand what Mr. O'Brien was

8    saying?

9           MR. WYSHAK:  Yes, that's fine, because Judge

10   Mulligan will be a witness at the trial and he'd be able

11   to testify in any event.

12          THE COURT:  Well, I imagine he will.

13      So with that limitation I propose that these be

14   admitted, but these, the Mulligan to O'Brien, are for

15   the limited purpose that Mulligan sent these letters.

16   (Pause.)  I hear no objection.  They may be so marked.

17      What else?

18          MR. WYSHAK:  Your Honor, we have all these

19   sponsor lists, um, that there's a -- and those are

20   Exhibit 46 and there are -- it appears to be about 68

21   individual lists -- 67 individual lists.

22          THE COURT:  Where do they come from?  I mean

23   what are they?

24          MR. WYSHAK:  These are lists of individuals

25   that -- the Office of the Commissioner of Probation

1    maintains lists of individuals who had made telephone

2    calls or written letters recommending candidates for

3    hiring and they made --

4              THE COURT:  And these come out of the files

5    for the Commissioner of Probation?

6              MR. WYSHAK:  Yes, they come out of the

7    computers of Mr. O'Brien's secretary.

8              THE COURT:  So what is your ground of

9    admission?

10             MR. WYSHAK:  Well, we think they're business

11   records, we also think that they're --

12             THE COURT:  Well, you've got a long road to

13   hoe there, don't you?

14             MR. WYSHAK:  Well, we also think these are

15   statements of O'Brien, I mean --

16             THE COURT:  Yeah, I follow it.

17             MR. WYSHAK:  -- his secretary is clearly his

18   agent or his employees --

19             THE COURT:  For this purpose.

20             MR. WYSHAK:  -- are his agents --

21             THE COURT:  And then you think that's

22   admissible against all three?

23             MR. WYSHAK:  Because we believe that these are

24   the equivalent of a co-conspirator statement.

25             THE COURT:  I'm following.

```
1              MR. WYSHAK:  These are the "smoking gun," so
2    to speak.
3              THE COURT:  Well, I -- be very careful saying
4    that, I -- we may get the sponsor lists of court
5    officers.  We'll see.
6              MR. FICK:  Your Honor --
7              THE COURT:  Wait a minute.  Wait a minute.
8              MR. FICK:  Sure.
9              THE COURT:  Now, your invocation of the words
10   "smoking gun" brings them all to their feet.
11             (Laughter.)
12             THE COURT:  And we'll hear Mr. Fick first.
13        Just as for accuracy -- and I'm so grateful that
14   the defense is stepping up and is not disputing over
15   trivial things, but it is true that these documents come
16   out of the secretary to Mr. O'Brien at the relevant
17   time, out of her computer?
18             MR. FICK:  Some but not all, I believe, is the
19   proper answer, is the sort of 100 percent accurate
20   answer to that question.  This is actually the subject
21   of a motion in limine.
22             THE COURT:  I thought I was on top of them and
23   I want to get to them.
24             MR. FICK:  No, I'm talking about 364, um, is
25   the motion in limine about these lists that addresses
```

1    the issue.  I mean the principle reason why we don't

2    think they're business records is --

3              THE COURT:  I don't think they're business

4    records either.  He says it's co-conspirator hearsay.

5              MR. FICK:  Well, I mean the fact that a

6    subordinate of Mr. O'Brien is writing things down

7    doesn't necessarily make it a statement in furtherance

8    of the conspiracy, 1, and 2, another one of these sort

9    of 403 objections to this is that these list are

10   enormous, they contain names of all kinds of people who

11   were never hired by probation, people who might have

12   been hired by probation, and to let them all in has a

13   great risk of prejudice because then the defense is in

14   the position of saying, "Well, no, not every one of

15   these people was hired under some sham process."

16        So, you know, clearly testimony about the

17   existence of references and depending whether they were

18   written down, I mean that's all fair game, but to say

19   that the documents necessarily come in, for various

20   reasons, I think is really a stretch.

21             THE COURT:  Well, you know, Mr. Fick, the only

22   reason we're having this discussion now is to save time

23   having the discussion while the jury is sitting there or

24   in the afternoon of a day that I've got a jury when I

25   will be -- will have even less time than I have today

1    and I will be making evidentiary rulings and we'll be

2    stuck with them.

3         If the ones that come out of the computer -- it's

4    a reasonable inference this data, sponsor lists, was

5    kept for a reason.  It passes the relevancy test.  Even

6    if they weren't hired, they were keeping -- given what I

7    understand is the government's theory from the

8    indictment, it makes sense that they were keeping track

9    of those people who had sponsors and that meant

10   something.

11        I cannot now -- I'm not going to because I haven't

12   been given the actual lists, but I suppose there's a 403

13   objection, um, and so listening to your argument I'm not

14   going to admit them, and so they must be given letters,

15   as the documents from the Senate President's office, but

16   I'm taking it that these are authentic and some of them

17   come out of that computer, and that's about as far as I

18   can go, I think, today, if that saves time.

19             MR. FICK:  It does.  Thank you, your Honor.

20             THE COURT:  All right.  Mr. Bailey?

21             MR. BAILEY:  Yes, Judge, thank you.  Mr. Fick,

22   um, picked up on some of what I was going to say, but it

23   was just a further objection to any type of preliminary

24   ruling that the sponsor lists constitute co-conspirator

25   statements.  I understand this court needs to get

1    further into the meat of this trial, I understand that,

2    but our position is that while we have never, um,

3    contested the fact that our client passed along names of

4    preferred candidates, there's absolutely no evidence

5    that she was aware of who a sponsor was, was ever told

6    someone's a sponsor or --

7                THE COURT:  Here, you're making an argument

8    which will be helpful to you at some time, but not now.

9    Thank you.

10               MR. BAILEY:  Thank you, your Honor.

11               THE COURT:  Anything else I can do with

12   respect to documents?

13               MR. WYSHAK:  Your Honor, there are -- and just

14   before we finish this last subject, I just want to

15   inform the Court that what we have done is we've created

16   a summary exhibit for all those sponsor lists, which I

17   think is Exhibit 46.  So in order to -- oh, I'm sorry,

18   45.

19               THE COURT:  "Master Sponsor List," you call

20   it?

21               MR. WYSHAK:  Yes.  So we would move to have

22   the Master Sponsor List admitted as a summary exhibit,

23   it encompasses all the information in those underlying

24   exhibits.

25               THE COURT:  Well, I favor the admission of

1    evidence under Rule 1006, but the defense raises the

2    same objections, I suppose.

3              MR. FICK:  And some additional ones.  But I

4    mean the so-called "master list" puts column headings in

5    place, including the word "sponsor," that are not

6    present on all of the actual lists and there's a certain

7    additional prejudice argument that's covered in the

8    motion in limine as well.

9              THE COURT:  Thank you.  But not for today

10   then.  I'm not in a position.

11        You people on both sides are doing very well, but

12   is there anything else I can do?

13             MR. WYSHAK:  Yes, your Honor, there's a series

14   of documents that I believe begin around Exhibit Number

15   89, which are public records from the House of

16   Representatives, things out of the budget, roll calls on

17   budget votes, um --

18             THE COURT:  And that's at least -- I'm not

19   adopting your theory, but that you would say that's

20   confirmation that this scheme was paying off?

21             MR. WYSHAK:  Yes.

22             THE COURT:  All right.  I understand that.

23   And they start at, you said -- yes, at 89?

24             MR. WYSHAK:  And I think they went through

25   approximately 102.5.

```
 1              THE COURT:  Right.  Why aren't those all, you
 2    know, quintessential records of the legislature, the
 3    great general -- what's it called, "The Great and
 4    General Court"?
 5              MR. SINNIS:  I think we have basically
 6    relevance objections to most of those, your Honor, as
 7    well as some are really snippets that are, you know,
 8    just extracted from what I believe is a broader record,
 9    so again I would have some completeness issues, but also
10    relevancy issues to those would be the main objections
11    that we were lodging for those.
12              THE COURT:  Okay, thank you.  I'm going to say
13    that I'm going to admit them all subject to your
14    relevancy objection and if, um, I'm persuaded of it -- I
15    would hope when they make objections as to completeness,
16    unless what the defense says is complete absolutely
17    submerges what is relevant, that these are all admitted
18    subject to a relevancy objection.  And that takes us
19    from 89 through, um, 102.5.
20         Anything else?
21              MR. BAILEY:  Judge, just as -- more in the way
22    of -- and I apologize for the colloquialism, of a
23    "heads-up," I don't think there's a contest issue in
24    terms of our client's Ware testimony, but that is likely
25    going to be subject to a possible completeness request
```

1    by Ms. Tavares's table and I just want to let the Court

2    know that at this point.

3              THE COURT:  Well, you have a motion in limine

4    there.

5              MR. BAILEY:  Yes.

6              THE COURT:  All right.  Now let me --

7              MR. AMABILE:  Your Honor, similarly with

8    Mr. Burke, we've been working on preparing our own, what

9    we would propose, to get the government informed about

10   that.  They've indicated to us that they don't intend to

11   introduce that in the early part of the trial so we've

12   been working on a variety of other things.  So we don't

13   generically object obviously to the admission of a

14   portion of his statement, but the one that they've

15   marked we do object to and we're preparing a proposal

16   that would, um -- that we view would be appropriate in

17   this circumstance.

18             THE COURT:  Thank you.  The next thing I want

19   to -- this is helpful.  The next thing I want to do is

20   address certain of the motions in limine.  I don't

21   propose to hold hearings on them.  I'm not in a position

22   to make final rulings as to some, but as to others, I

23   am.  And so let me address that now.

24        First I'm going to deal with the government's

25   motion in limine to preclude the presentation of

1    evidence, cross-examination, or argument regarding

2    certain subjects.  It's a rather broad motion.  The

3    defense has objected to it.

4        There are five areas and I'll deal with each one.

5    They claim that Mr. O'Brien had exclusive hiring

6    authority, the claim that the probation department was

7    not part of the trial court, um, and we'll start with

8    those two.

9        Those are mixed questions of fact and law.  They

10   are -- I'm not prepared to address them now, but I will

11   tell you that my present thinking -- and that's all I'm

12   going to say, my present thinking is that the, um -- is

13   that it's unlikely under the law that he had sole and

14   exclusive hiring authority, and so the defense may be

15   out on a limb making that contention.

16       Second, I think that the claim that the Probation

17   Department was not part of the trial court is even

18   thinner.  The question about whether it's subject to the

19   trial court policies and procedures manual is -- well,

20   that has factual aspects to it and of course those are

21   for the jury, but it seems pretty clear to this court

22   that, um, as a matter of law, the Probation Department

23   was part of the trial court within the judicial branch

24   of Massachusetts.

25       Subject matter three, that the certification was

1    not false.  I mean that's a question of fact and so to

2    that extent the government's motion is denied.

3         And this business about bringing up lists of

4    recommendations for Court Officer positions.  I make no

5    ruling on that, but again in an attempt to be helpful,

6    um, one of the issues that I do see here is whether the

7    Chief Justice for Administration was having the wool

8    pulled over his eyes, and if at the same time that

9    Mr. O'Brien is supposed to have been doing what he was

10   doing with others, um, the trial court itself was doing

11   much the same thing.  I take no position, but that seems

12   to be the defenses' position.  But with respect to Court

13   Officers, no, I think that's fair game because it goes

14   to the issue of reliance, was -- if in fact the Chief

15   Justice for Administration was the administrative

16   superior of the Commissioner of Probation, as it appears

17   as a matter of law to me he was, but we'll see, then his

18   reliance on these certifications that are alleged to be

19   false, um, will involve what his other agents were doing

20   and what he knew they were doing, if they were doing

21   anything.

22        So we got into this, the subpoenas which I

23   denied, and that's of course after Mr. O'Brien's gone

24   and after the law changed and therefore I don't think

25   we're going to get into any of that.  But anything at

1  the same time seems to this court -- anything at the

2  same time by the office of which the Chief Justice for

3  Administration headed, um, I think we may get into.

4      The mere fact that a politician, a judge, or other

5  individual provided a letter of recommendation, served

6  as a reference, um, to the extent the government wants

7  to keep that out, that's denied.

8      The motion for 15 additional minutes for O'Brien's

9  opening statement is denied.  You share the time as you

10  see fit.

11      And the government's motion, I've dealt with that,

12  with the Senate President's office.

13      The motion to compel compliance with Local Rule

14  116(2)(b), 2(e), and (f), that's allowed.  This has to

15  be broken down by the government and I expect it to be

16  done.

17          MR. WYSHAK:  Well, your Honor, if I may

18  address that for a moment?

19          THE COURT:  Very briefly.  I don't intend to

20  hold hearings on things you don't like, and I say that

21  to everybody, but I'll hear you briefly.

22          MR. WYSHAK:  I mean we've advised the

23  defendants, if it wasn't obvious from the discovery that

24  was produced, that there are no known prosecutable

25  federal offenses regarding any of the government's

1    witnesses, except for those witnesses who participated

2    in the scheme which is the subject matter of this

3    prosecution, and we've given them lists of the people

4    who did so.

5            THE COURT:  And have you broken it down

6    witness by witness?  That seems to be their objection.

7            MR. WYSHAK:  Well, that seems quite

8    nonsensical.

9            THE COURT:  That's what the rule requires,

10   Mr. Wyshak.

11           MR. WYSHAK:  Well, I think the rule requires

12   that we provide them with the information.

13           THE COURT:  I think not.  Witness by witness.

14   That's the Court's order.

15       All right.  Exclude reference to the Boston Globe

16   investigation.  A defense motion.  That's generally

17   allowed.  That may have to come up, but it's certainly

18   not relevant in itself.  So that motion is allowed.

19       Exclude reference to the so-called "Ware

20   investigation" and report.  I'm not admitting -- I'm

21   certainly not admitting the report, and I don't know

22   that the government would suggest it would be admitted

23   under 8038, but we're certainly going to have reference

24   to it because testimony before the Ware investigation is

25   germane to this case.  So the motion is allowed in part

1    because I'm not -- to the extent I'm not admitting the

2    report, but the fact of the investigation may come up.

3    So to that extent it's denied.

4            MR. AMABILE:  Your Honor, could I just -- I

5    know your Honor wants to --

6            THE COURT:  Yeah.

7            MR. AMABILE:  The fact of the investigation I

8    don't think needs to come up and shouldn't come up

9    because it can be referred to and to the extent somebody

10   testifies in a prior proceeding just in the same way

11   that a retrial would and bringing up that there was some

12   kind of so-called "independent investigation" is going

13   to create an inference that there was a conclusion made

14   that was adverse to the clients.

15           THE COURT:  When you characterize it your way,

16   Mr. Amabile, that makes some sense.  We'll have to take

17   it on a question-by-question basis.  My ruling is

18   intended to give guidance.

19       For instance, I'm now addressing defendant

20   Tavares's motion in limine to allow evidence regarding

21   an out-of-court conversation.  I'm disposed to allow

22   that motion because that does appear to be a statement

23   of her then present intention.  And so I don't think we

24   ought to refer to it as some sort of "independent

25   investigation," but it may have to come up.  And that's

1    about all I could say on that.

2         Now, those are the motions in limine that I have

3    before me.  Yeah, that doesn't -- and, you know,

4    Mr. Fick, I'm not saying there aren't others --

5              MR. FICK:  Okay.

6              THE COURT:  It's my own error, but those are

7    the ones -- Oh, no, I have two others and they're

8    Mr. Amabile's, and I mean no disrespect to him, but

9    these -- your motions regarding rumors and hearsay

10   relating to hiring, um, rumors and hearsay relating to

11   legislative action, well, at this level of generality

12   the motions are allowed, but it doesn't mean much.  I'm

13   not going to allow rumors.  I'm not going to allow

14   hearsay, um, unless of course I have a particular

15   exception in a particular situation.  So I'm not

16   forbidding the government from anything here.

17        Now that's all I have before me.

18             MR. WYSHAK:  Well, your Honor, if I might just

19   address one point --

20             THE COURT:  One point.

21             MR. WYSHAK:  -- on the government's motion

22   regarding precluding the defendants from addressing

23   certain subjects which we thought were matters of the

24   law and have been decided by Judge Saylor.  I think on

25   the third claim there that -- we agree that the ultimate

1    issue of whether or not the certifications were false is

2    an issue for the jury, however I think what we were

3    seeking was the defendant's contention during the motion

4    to dismiss the indictment litigation that, um, the

5    personnel standards to which, um, Mr. O'Brien was making

6    a certification did not include the standard that he

7    hire the most qualified candidate, and Judge Saylor

8    ruled as a matter of law that that standard is part of

9    this certification.  So that's what we were moving to

10   preclude them from arguing to the jury, that when he

11   certifies he's not certifying that it's the most

12   qualified candidate.

13            THE COURT:  I have carefully reviewed Judge

14   Saylor's decision, it is of course law of the case, I've

15   indicated that, but law of the case is subject to

16   revision by the judge who bears the ultimate

17   responsibility.  Now that's me.  I don't see any reason

18   to revisit that aspect of his decision or any other, as

19   it's been presented to me, at all.  In fact, I agree

20   with it wholeheartedly.  I'm not clear at this juncture

21   -- and that's what I was trying to say.  It seems to me

22   that it's pretty clear as a matter of law that these

23   personnel standards of the trial court do govern and

24   also it's pretty clear as a matter of law that the

25   language themselves requires the hiring of the best

```
 1    qualified candidate.  Now, having said that, if that's
 2    what you were hoping to hear from me --
 3              MR. WYSHAK:  Yes.
 4              THE COURT:  Thank you.  And I have no
 5    hesitancy in saying that.  I think Judge Saylor was
 6    absolutely correct.  I don't sit in review of anything
 7    he's done.  But I'll be very clear, I adopt it, and
 8    completely.
 9         And having said that though, Mr. Amabile, on
10    behalf of all the defendants, makes a good point.  This
11    case is a criminal case.  They can make arguments.  I'm
12    not going to foreclose them from making arguments.  I
13    will discharge my duty of teaching the law and I will
14    emphasize that they must take the law from me.  That's
15    different than saying "You can't argue this," "You can't
16    argue that."  I'm trying to give people appropriate
17    guidance.
18              MR. WYSHAK:  And one other thing, your Honor?
19    If something is a matter of law, they should not be
20    arguing it to the jury as a matter of fact and that's
21    our concern.
22              THE COURT:  I stated that at that level of
23    generality, I agree.
24         I want to get on to the jury questionnaire and the
25    procedures we're going to follow.
```

```
1            MR. WYSHAK:  There is one more, your Honor.

2            THE COURT:  All right, briefly, because I'm

3   stopping to virtually go to Memphis at about 5 minutes

4   to 10:00.

5            MR. WYSHAK:  I just want to bring it to the

6   Court's attention that we did make a motion in limine to

7   admit the Bucci voicemails.

8            THE COURT:  I have not myself reviewed it.

9   I'll go back and I'll be sure to do that.  But I do know

10  what those are.  You referred to them before,

11  Mr. Wyshak, and I thank you.

12       Yes?

13            MR. FICK:  Docket Number 357 is that motion

14  and the government has responded.  There is one more,

15  Docket 365, which is a motion in limine about the

16  criminal record or supposed criminal record of one of

17  the charged hires in the government's case.  So those

18  are two other motions that are out there.

19            THE COURT:  I appreciate it.

20       Let me talk now about the questionnaire.  I'm

21  going to give you copies of my revision to the

22  questionnaire when we recess.  I have severely edited

23  them, they go well beyond what I expected, but I have

24  asked a number of these questions and in the forms to

25  which you agree.  I do want -- and this is tentative
```

1    only.

2         I was just told this morning of a revision in the

3    proposed witness list.  I've incorporated that.  You

4    will take this as a draft and the reason you're going to

5    take this as a draft is that I have not had sufficient

6    time to talk with our Jury Commissioner over this and I

7    want to.  But with that said, here's how we're going to

8    proceed over the next few days.

9         Now, Monday morning -- um, I'll settle on the

10   questionnaire later on today after I've done my

11   jury-waive trial.  Later on today I'll meet with the

12   Jury Commissioner.  I'll finally settle on the

13   questionnaire.  You'll all get copies and you'll get

14   copies of this draft when we leave here this morning.

15        I'd like you here before 9:00, say about quarter

16   of 9:00 here in this courtroom on Monday morning.

17   Ms. Gaudet will gather you and we'll all go down to the

18   jury lounge.  The Court Reporter will be there.  I will

19   greet the jurors.  I will, um, give my normal greeting

20   to them about the importance of their duties.  I will

21   say that the jury selection in this case will proceed in

22   two phases and the first one will be to fill out this

23   questionnaire.  I will make mention of the length of the

24   trial.  I will make mention of the fact that there has

25   been mention of the trial in the media and that we have

1    questions directed to that.  And once having done that,

2    we will adjourn and we will leave the administration of

3    the questionnaire in the hands of the Jury

4    Commissioner.

5           I propose that we adjourn back up here because I

6    may be able to rule on these additional motions, and as

7    Mr. Amabile says, there may be more motions to come.

8           As soon as the questionnaire has been administered

9    and copies made, copies will be delivered to all of you.

10          One of the -- I won't say "flaws," but one of the

11   aspects of a two-step jury, um, impanelment is that you

12   both are enabled to do juror research.  I'm not

13   forbidding that nor encouraging it.  I do say that you

14   must exchange the actual, um, screen shots or references

15   to such screen shots if you do that research.  Be very

16   clear that you've got to exchange that.  So you people

17   will stay up late that night and I propose that you make

18   these exchanges by 8:30 -- well, I should say the

19   timing.

20          Mr. Amabile, I know we have our deal and you

21   worked it into the questionnaire and I'm going to

22   conform to it, but not the first day, I need you here

23   Monday.

24               MR. AMABILE:  No, I plan to be here.  I would

25   also ask -- and I don't mean to interrupt, but if we

1    could convene at 8:30 because after we've reviewed your

2    draft I think there may be a need to put some objections

3    on the record.

4              THE COURT:  Oh, I propose to do the following,

5    though of course you may put objections, although I

6    don't think we need to start making them at 8:30 nor do

7    I need to be here.  I'm going to file in the record your

8    original draft with my notations on it so your rights

9    are saved as to anything -- all parties, anything I've

10   cut out of the draft you submitted, your rights are

11   saved.

12             So now we're at 8:30 on Tuesday morning, you've

13   exchanged what data you have, and if you jointly agree

14   that a juror should be excused, I'd like you to prepare

15   -- you can note on the jury list just the ones you

16   jointly all agree that a juror ought to be excused.  I

17   will be reviewing them myself and I'll make my own

18   determinations as to what jurors should be excused.

19             Then we will meet commencing at 9:30 on Tuesday

20   morning to talk -- not in the presence of the jury, but

21   in open court, to talk about challenges for cause.  I

22   propose to excuse all the jurors that I note and to the

23   extent your joint list is different than mine, I propose

24   -- assuming I think I have enough jurors to go forward,

25   to excuse the ones you jointly want excused.

1          With that done I propose -- the jury list will be

2     the order in which they'll be impaneled, so I will

3     say -- and we'll have to work this out, but you're all

4     cooperating very well and I appreciate it, so I'll say,

5     "Any challenges to the first 10?"  "To the first 20?"

6     And then I can conceive of three categories.  One, I

7     accept your challenge and excuse a juror; I reject it

8     and declare the juror indifferent; or as may very well

9     be the case, I'll need to inquire further, that a juror

10    will say something about their inability to serve but

11    I'll want to hang onto them.  I'm not just putting them

12    in the box.  A juror will say something about a

13    familiarity with the case, but I'm not satisfied that

14    that suggests bias and I'll want to know whether the

15    juror can put that to one side and adjudicate the case

16    on the merits of the evidence.

17         So the three categories are excused, not excused,

18    or ask, and I'll ask.

19         We'll take the morning and go through those and

20    I'll make my rulings.  And so the jurors that remain,

21    I've not declared indifferent, but at least we have an

22    idea of who we need to inquire of further.  And

23    Wednesday morning -- we'll call those jurors all in on

24    Tuesday night.  Wednesday morning, impanelment with --

25    if you've impaneled before me, there'll be one

1   significant change, so you understand it.

2        The venire comes in and we've got lots of them

3   here and at that time I'm going to ask a few questions,

4   one, and that's the time where I'm going to introduce

5   you personally and you stand before the jury and who you

6   are and where your offices are and I will then yet

7   again, after the jurors have had any -- had a chance to

8   think about it, I will ask specifically, "Has anyone

9   been employed by" -- because the questions don't really

10  get to that, "by the U.S. Attorney's Office, by the

11  Federal Defender's Office, by the law firms, in

12  litigation with those offices," "sensible of any bias or

13  prejudice," and the like, and I'll do that with the

14  venire as a whole and I'll say, "Raise your hands if you

15  do."  And you're all familiar with that.  You can be

16  watching.

17       Then what we'll do, when we're set, is -- after

18  I've asked those questions, then we will begin the

19  impanelment and instead of filling the box we'll simply

20  take Juror Number 1, if Juror Number 1 remains, or Juror

21  Number 15, if that's the first person on the list, and

22  the Clerk will call out, "Juror Number 7," the name, and

23  instead of having them go to the box, they'll come over

24  to my left, the sidebar with the Court Reporter, I will

25  inquire of the juror further, I will either excuse the

1    juror or declare the juror indifferent.  If the juror is

2    indifferent -- and the juror will step away, then you

3    may exercise a challenge, if you want, and I will rule

4    on your challenge.  But the juror will get in the box

5    and we'll fill the box until we have 16.  Then I'll stop

6    and we will have challenges.

7         The government has 8.  The defense has 12.  The

8    government will go first.  There won't be any back

9    strikes.  When the government's gone, the defense will

10   go.  All those jurors will be excused.  The last four

11   jurors chosen will be the alternates.  You can use your

12   challenges as you see fit.

13        So let's say 6 jurors are excused and we have 10

14   jurors sitting there.  So we'll follow the same

15   procedure going along until I fill the box with those

16   6.  Then as to those 6, the challenges will be

17   exercised, only this time because we have to be

18   even-handed the defense will go first and they'll

19   challenge, the government would challenge, et cetera,

20   until I have 16.  When I have 16, I'll decide the

21   foreperson.  We'll take a recess.  Bring them back.

22   Swear them.  The case will begin.

23        I must go to my jury-waived case and we'll meet

24   again -- I'm going to take a recess now but Ms. Gaudet

25   will give you the draft jury questionnaire.  I thought I

1    saw the Jury Commissioner here in the courtroom.  Is he

2    here?  Oh, yes, he is.  I'm going to meet with him

3    briefly right now.

4              (Pause.)

5              THE COURT:  Ms. Gaudet is always so helpful

6    and also far more skilled than I, but we'll give you a

7    disk of all these questionnaires.  You're facile with

8    that.  That will be provided to you.

9         But I need to talk to the Jury Commissioner now.

10   I thank you.  We'll recess.

11             (Adjourned, 11:00 a.m.)

12

13                 C E R T I F I C A T E

14

15        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

16   do hereby certify that the foregoing record is a true

17   and accurate transcription of my stenographic notes,

18   before Judge William G. Young, on Friday, May 2, 2014,

19   to the best of my skill and ability.

20

21

22

23   /s/ Richard H. Romanow 05-06-14

     _____
24   RICHARD H. ROMANOW  Date

25