UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) |  |
| v. | ) ) | Criminal No. 12-40026-WGY |
| JOHN J. O'BRIEN, ELIZABETH V. TAVARES, and WILLIAM H. BURKE, III, | ) ) ) ) ) |  |
| Defendants. | ) |  |

**MOTION FOR RECONSIDERATION OF THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE CROSS EXAMINATION OF FRANCINE GANNON REGARDING COURT OFFICER CASE FILES**

On Friday, May 16, 2014, at a sidebar conference, this Court orally denied the government's motion *in limine* to preclude the defendants from cross examining Francine Gannon, the constituent services director for Senate President Therese Murray, regarding Gannon's court officer case files. As grounds therefor, this Court found that court officer hiring was relevant to the Indictment's allegations that the defendants violated the state bribery and gratuity laws. In particular, the Court explained that the defendants' allegations regarding court officer hiring mirrored the government's allegations regarding the hiring of probation officers – at least with respect to the government's bribery and gratuity charges. Respectfully, the government disagrees with the Court's analysis and, for, the following reasons, asks this Court to reconsider its prior ruling.

First, the defendants' allegations regarding court officer hiring amount to no more than *unsubstantiated* allegations of patronage. Indeed, the only "evidence" the defendants have proffered to show that the Trial Court is engaged in patronage hiring is: (1) court officer sponsor lists; and (2) the Gannon court officer case files – both of which demonstrate *only* that some

1

candidates for court officer jobs had political sponsors and some of those candidates got jobs. Crucially, the defendants have presented no evidence (and cannot, in the government's view, present such evidence) that the Trial Court gave any weight to political sponsorship in hiring court officers, let alone engaged in absolute patronage hiring.

To the contrary, the government's investigation has revealed that the Trial Court placed little, if any, weight on political sponsorship when hiring court officers. Take, for instance, the case of David Hemmings, an assistant court officer looking for a promotion. According to Gannon's case files, Hemmings contacted Gannon at the Senate President's Office in or about 2007. Gannon contacted a representative of the Trial Court who responded that the Trial Court could not promote Hemmings because Hemmings' time and attendance was poor. It was not until a year later, after Hemmings had improved his time and attendance, that he was promoted.[1] This example suggests that the Trial Court was concerned more with a candidate's performance on the job than his or her political sponsor.[2]

The Indictment, on the other hand, alleges that the defendants hired and promoted probation officers based purely on political sponsorship (not merit) with the intent to influence legislative decisions regarding the budget and other legislation that affected the Probation Department. See, e.g., Indictment at ¶16. The government will prove that not only did

---

[1] The Gannon court officer case files are attached, in toto, to the defendants' opposition to the government's motion *in limine* to preclude cross examination of Francine Gannon (Docket No. 430.).

[2] In their opposition to the governments' motion *in limine*, the defendants point to the hire of Richard Musiol's father as an assistant court officer at the time that Musiol was Murray's Chief of Staff. There is nothing, however, in Gannon's case file to suggest that the hire was based solely on Murray's recommendation. For instance, there is no indication, in Gannon's file, that Musiol had trouble getting through an interview, as indicated in her files for probation officer candidates Patrick Lawton and Patricia Mosca.

candidates for probation positions have political sponsors, but that those candidates got jobs because, *and only because*, of those sponsors.  Patrick Lawton is a prime example.  This Court already has heard evidence that Lawton was ill-qualified for a job as a probate court probation officer.  He resigned from the Plymouth County D.A.'s Office purportedly for engaging in misconduct at work and he performed dismally in his second round interview.  Indeed, the interview panel had to expand the list to ensure that Lawton, the Commissioner's preferred candidate, advanced to the final round.  It was only after the final round interviewers falsified their scores (as the evidence will show), that Lawton ended up the number one candidate for the job.  There can be only one reason why the Commissioner went to such great lengths to hire a candidate that no one else wanted to hire.  In the words of Lawton's father, Judge Mark Lawton: "I know that Jack O'Brien takes very seriously calls from your office where there is a strong interest on the part of the Senate President."  And there is only one reason why O'Brien would take such calls so seriously from a woman with whom he has no personal relationship: to influence the Senate President with respect to the budget and other legislation that affected the Probation Department.  The Mucci recorded voicemail messages, among other evidence, prove that to be true.

    Second, even if the defendants had presented evidence that the Trial Court was engaged in patronage hiring (which they have not), the defendants have not presented (or proffered) any evidence that (1) the CJAM acted with the intent to influence state legislators with respect to a particular legislative act, or (2) the CJAM hired court officers "for or because of" any official legislative act.  See, e.g., M.G.L. ch. 268A, §§2, 3.  To answer the Court's question, this is where mere patronage ends and bribery or gratuity begins.  This is not a case about mere patronage.  The government has alleged and expects to prove that the defendants hired and promoted

3

probation officers specifically so that they could obtain more lucrative budgets year after year, and to obtain favorable treatment with respect to legislation that directly affected the interests of the Probation Department. One example of such evidence is the Mucci recorded voicemail messages during which Mucci states: "But Jack [O'Brien] had a meeting at the State House yesterday and I think, or the day before and again that triggered a lot of this. You know when he got everything he wanted this year in the budget moneywise, so they feel like they did that for him, you know, and obviously he needs to do this for them." The government expects to present additional evidence of this sort as the trial progresses.

Finally, even if the two were analogous (court officer and probation officer hiring), "two wrongs do not make a right." That is, even if CJAM Mulligan were engaged in similar violations of the bribery and gratuity laws (which, the evidence shows, he was not), evidence of that conduct would be relevant only to the CJAM's credibility.[3] And even if bribery were relevant to one's capacity for truth-telling, extrinsic evidence of the CJAM's capacity for truthfulness is not admissible through Francine Gannon. See Fed. Rule Evid. 608(b).

In sum, the defendants' allegations regarding court officer hiring are not analogous to the government's allegations regarding the hiring and promotion of probation officers because the defendants have not even presented evidence of patronage hiring, let alone evidence that the Trial Court engaged in patronage hiring with the intent to influence the legislature as to some particular thing. Sponsor lists, standing alone, do not constitute such evidence. The Gannon court officer case files, standing alone, do not constitute such evidence. At this stage, therefore, cross examination of Francine Gannon regarding her court officer files will serve only to mislead

---

[3] The government does not see how the CJAM's involvement in state law bribery or gratuity violation is relevant to the government's ability to prove any of the elements of bribery or gratuity as to each of the defendants.

and confuse the jury.

For these reasons, the government moves this Court to reconsider its decision on the government's motion *in limine* to preclude cross examination of Gannon regarding her court officer case files.

                                              Respectfully submitted,

                                              CARMEN M. ORTIZ
                                              United States Attorney

                                 By:    /s/ Karin M. Bell
                                            Karin M. Bell
                                            Fred M. Wyshak, Jr.
                                            Robert A. Fisher
                                            Assistant U.S. Attorneys

Date:   May 19, 2014

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                              /s/ Karin M. Bell
                                              Karin M. Bell
                                              Assistant United States Attorney

Date:   May 19, 2014