UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | NO. 12-CR-40026-WGY |
| | ) | |
| **JOHN J. O'BRIEN, ET AL.** | ) | |
| | ) | |

**DEFENDANT TAVARES' MOTION *IN LIMINE*
TO EXCLUDE EXHIBITS 104 AND 104.1**

Defendant, Elizabeth V. Tavares, by and through counsel, hereby moves *in limine* to preclude the government from introducing, and eliciting testimony regarding, Exhibits 104 and 104.1.[1] As explained more fully below, neither exhibit is admissible and should be excluded.

**BACKGROUND AND ARGUMENT**

A.  Exhibit 104

Exhibit 104 is a print-out of a chain of email correspondence. The second email in the chain is from an Editor of the "Spotlight Team"[2] at the Boston Globe, sent to Coria Holland, the Communications Director for the Office of the Commissioner of Probation.[3] It contains a series of questions (only one (1) of the eight (8) questions posed has not been redacted) that the

---

[1] Exhibit 104 has been pre-marked as Exhibit AY; Exhibit 104.1 has been pre-marked as Exhibit AZ.

[2] The "Spotlight Team" at the Boston Globe wrote the article for the Globe that eventually lead to the indictment in the present case.

[3] This email was also carbon-copied to Joan Kenney of the Public Information Office for the Massachusetts Supreme Judicial Court.

Spotlight Team editor is "interested in discussing with probation officials" about. The unredacted question asks:

> 8. Your department is routinely criticized for a tradition of patronage jobs. News stories regularly report the jobs that relatives of lawmakers hold in your department. How do you address the blanket criticism – that is widely held – that you can't get a job in probation unless you know somebody? How are decisions made about hiring and promotions?

The first email in the chain is from Coria Holland in which she forwards the above-described second email to Maria Walsh and Tavares. Following the questions contained in the second email are what appear to be a series of (redacted) responses to those questions. It is unclear based upon the exhibit who the author of these answers are, but presumably they are written by Holland because they appear to be attached to the email that Holland is forwarding to Walsh and Tavares. The only unredacted response is to the question quoted above and contains a brief description of the minimum qualifications for applicants, the second round interview panel, and also states that "all probation personnel appointments must be approved by the Administrative Office of the Trial Court."

It is not entirely clear on what theory the government intends to admit this exhibit. These statements are clearly hearsay and no exception appears to apply. Moreover, neither Coria Holland nor the Spotlight Team editor are named as co-conspirators by the government. The statements could therefore not be introduced on that basis. Most importantly, however, is that the prejudicial effect the introduction of such statements would have substantially outweighs any probative value the exhibit may have. That the Spotlight Team editor believes that OCP is "routinely criticized for a tradition of patronage jobs" in the media, is not only irrelevant, but highly prejudicial. What other news sources may or may not be reporting about OCP has nothing to do with the charges here and would only improperly bolster the government's position

"that you can't get a job in probation unless you know somebody."  This Court has, moreover, consistently stated that this case is not about patronage because patronage is not a crime.  Given the seriously collateral nature of this exhibit, and the dangerously slow pace this trial has been moving at,[4] this Court should preclude its introduction.

B.     Exhibit 104.1

Like Exhibit 104, Exhibit 104.1 is a print-out of an email.  The email is from Maria Walsh and it is sent to the Spotlight Team editor.  Joan Kenney and Coria Holland are carbon-copied; Tavares is "blind" carbon-copied.  The email directs the recipient (the Spotlight Team editor) to an attachment.  The attachment contains questions (originally written by the Spotlight Team editor which were separate from the questions contained in Exhibit 104) and answers (written by Walsh), all of which have been redacted except for the following:

> --According to her deposition, West Roxbury's Chief Judge, Kathleen Coffey warned you in 2004 that Jim Rush was not up to the job of a chief probation officer.  Why did you hire him anyway?  In 2006, she ranked Deirdre Kennedy as the top candidate for chief and did not put Mark Prisco on her list of recommendations at all.  Yet Prisco was hired.  Why?
>
> **Mr. Rush participated in an extensive interview process designed to select the most qualified candidate.  This process is approved by the Administrative Office of the Trial Court.**

(bold font in original).

Even assuming the Spotlight Team editor's hearsay statement, which itself contains hearsay, might be admissible to provide context to a statement of a co-conspirator (Walsh) under Fed. R. Evid. Rule 801(d)(2)(E), this Court should still preclude this exhibit.  Jim Rush is neither a charged hire, nor a Racketeering Act (RA).  Likewise, Mark Prisco is neither a charged hire,

---

[4] For example, if the government chooses to introduce this exhibit, the defendants may be forced to call the Spotlight Team editor as a witness; a person that has been on *neither party's* radar.

nor an RA. Evidence regarding these hires is entirely irrelevant and prejudicial; their introduction inserts into this case issues well beyond the scope of the indictment and will do nothing but confuse the jury. Not only this, but, under the government's theory of the case, these hires are likely considered by the government to be instances of either mail fraud or a violation of federal or state bribery/gratuity laws. They are therefore prior bad acts of the defendants, implicating Fed. R. Evid. Rule 404(b). The government, however, has filed a notice with the Court that it will not be introducing any 404(b) evidence at trial because any such acts that may be violative of 404(b) are "intrinsic to the crimes charged in the Indictment" and thus do not implicate the rule.   *See* Dkt. # 368. Evidence regarding these other hires are not "part and parcel" of the mail fraud and bribery charges set forth in the indictment. The government has delineated the universe of hires about which this trial should be about in its indictment; going beyond that universe would necessarily involve evidence of acts that are in no way "intrinsic to the crimes charged in the Indictment." This Court should preclude such evidence not only because it is irrelevant and prejudicial, but because the government has failed to comply with the notice requirements set forth in Rule 404(b) and ordered by the predecessor trial judge.

## CONCLUSION

For the reasons set forth above, and in the interests of justice, Tavares respectfully requests that this Honorable Court preclude the government from introducing into evidence Exhibits 104 and 104.1 or eliciting testimony regarding the same.

Dated: June 3, 2014

Respectfully submitted,

ELIZABETH TAVARES
By and through her attorneys,

/s/ Adamo Lanza
Adamo L. Lanza, BBO #689190
R. Bradford Bailey, BBO#549749
Jeffrey A. Denner, BBO#120520
Four Longfellow Place, 35th Floor
Boston, Massachusetts 02114
Tel.   617.227.2800
Fax.  617.973.1562
alanza@dennerlaw.com
bbailey@dennerlaw.com
jdenner@dennerlaw.com

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing [NEF] and paper copies will be sent to those indicated as non-registered participants.

/s/ Adamo Lanza