UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Criminal No. 12-40026-WGY |
| **JOHN J. O'BRIEN,** **ELIZABETH V. TAVARES, and** **WILLIAM H. BURKE, III,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

# MOTION FOR RECONSIDERATION OF THE COURT'S ORDER LIMITING THE GOVERNMENT'S EVIDENCE

The government respectfully moves this Court to reconsider its June 19, 2014 order limiting the remainder of the government's presentation of its case-in-chief to 17.5 more hours (now 14 hours with the passage of three trial days). As described below, although the government has taken steps to substantially pare down its case in response to the Court's concerns and its order limiting the remainder of the government's case to 17.5 hours, it will not be able to complete its presentation of evidence before the 17.5 hours elapse. Thus, the Court's order has the practical effect of (1) suppressing evidence that is substantial proof of one or more racketeering acts of the Indictment and, therefore, of the RICO charges; and (2) based upon the resulting failure of proof or otherwise, dismissing racketeering acts. The government requests that the Court permit the government

1

to complete its case in the normal course (which it anticipates will require approximately 17 more hours of direct and redirect examination beyond the 17.5 the Court has allotted), subject of course to the Court's right to exclude any particular piece of evidence that (after a proffer and discussion) the Court finds to be irrelevant, otherwise inadmissible, or unnecessarily cumulative.

The government proposes that the Court adopt a full-day trial schedule, which will both enable the government to present its case and also address the Court's concern that the case be submitted to the jury relatively soon.

## BACKGROUND

1.      On June 18, 2014, after 27 half-days of trial, including three days of jury selection, the Court ordered the government to provide an estimate of the total hours needed to complete the government's case. The government provided the Court with a good faith estimate that it would need 37 more hours to complete its case-in-chief (that is, the government's case alone, not counting cross-examination). [Docket ("D.") 478]. In response to the Court's concern regarding the length of the trial, the government agreed not to pursue a number of racketeering acts (at the time, it identified racketeering acts ("RA") 52A and B; 53A and B; 54A and B; 55A and B; 61A and B; and 62A and B).

2.      On June 19, 2014, this Court orally ordered that the government would be allotted 17.5 hours to present the balance of its case to the jury. This

order will prevent the government from presenting evidence that is substantial proof of numerous racketeering predicates of mail fraud, bribery, and illegal gratuities and, more generally, the RICO counts. The government respectfully requests that the Court reconsider this ruling and allow the government to present the evidence it has determined is needed to carry its heavy burden of proving the case to the jury beyond a reasonable doubt.

   3.  At a pretrial conference held on March 13, 2014, the government informed the Court that it needed approximately two months to present its case-in-chief at trial.[1] [D.307]. The Court responded that eight weeks was too long and that it would address the length of the government's case at the final pretrial conference. [D.307; 3/13/2014 Tr. at 10]. At the next pretrial conference on April 4, 2014, the Court made clear that it was concerned about the length of the trial and that it might exclude redundant evidence at trial. [D.334, page 20]. The Court allotted the government 45 minutes for its opening statements, and one and one-half hours for its closing. [D.319; D.334, pages 17, 39]. The Court also (on defense counsel's motion) severed Counts Thirteen to Thirty from the counts that are currently being tried. [*Id.*]. Although the Court granted the severance to, in its view, make the case "more comprehensible, less confusing," [D.334, page 28], it

---

[1] This estimate included only the government's presentation, not cross-examination. [3/13/2014 Tr. at page 9 (Court questioned: "All of these questions lead up to how long will it take for the government – put aside cross-examination, how long will it take for the government to put on its case?")].

also hoped that severance would pare down the trial. [D.334, page 29]. Nonetheless, it said that it would "let [the government] try the case," [D.334, page 20], which the government said would take approximately two months *even if* Counts Thirteen through Thirty were severed. [D.334, pages 19, 21]. Indeed, in considering the severance motion, the Court recognized that the severance might result in two trials in each of which the government's evidence alone would consume two months. [D.334, page 14]. At the end of the hearing, the Court said that it had "done the slicing that [it] intend[ed] to do." [D.334, page 39]. Thus, as of March 13, 2014, the Court recognized that it was the government's unwavering position that its case-in-chief would take approximately eight weeks. [D.334, pages 22 (wherein government reiterated that its case would take seven to eight weeks); 23 (wherein Court commented that the defense would get "equal time," and that the resulting trial might be four months); 40 (wherein Court stated that the trial could last three months)]. The Court's June 19th time limitation has thus come as a complete surprise to the government, one for which it did not prepare in planning its presentation of the case.[2]

---

[2] As the jury was selected, the Court *sua sponte* announced that the trial would last two months. Although this was not the amount of time that the Court had previously acknowledged the case could take (*i.e.,* four months), the government did not at that time understand this comment to the jury to be an actual ruling by the Court either limiting the amount of time the government had to try its case-in-chief or the amount of time the defense would have to present a defense case (if they chose to do so).

4.      The government has not caused any delay of the trial, has consistently had witnesses available, and has proceeded expeditiously. To date, the government has presented trial testimony over the course of 26 trial days (including extensive cross-examination). Therefore, using the government's initial assessment of the case – *i.e.*, a two-month trial -- it would require approximately 14 additional trial days to complete its presentation of evidence. Of course, the pace of the trial has been considerably slower than the government originally anticipated. The delays are due to causes beyond the government's control, however. These delays could not reasonably have been envisioned when the government first estimated the need for two months of trial to present its case. For instance, there have been an abundance of lengthy sidebar conferences, approximately 190 questions from the jury, and wide-ranging cross-examination that has oftentimes dealt with ancillary issues. In addition, on the first day of trial, the Court ordered the government to present evidence of mail fraud prior to presenting evidence of bribery and gratuity, altering the government's order of proof. This order has forced the government to recall witnesses and present the case in a manner that is less than efficient. Another result of the Court's order regarding witness order is that the government has had to reserve the presentation of critical evidence that supports the racketeering counts.[3]

---

[3]In addition, in response to the Court's order regarding the presentation of

5

5.      In response to the Court's June 19 ruling, the government has closely scrutinized the remaining evidence it intended to produce and has decided, albeit reluctantly, not to call numerous witnesses (approximately 40) whose testimony is relevant to proof of the charges in the indictment.[4]  Moreover, as the Court has probably noticed, the government is making every attempt to move quickly through its direct examinations, including restricting the testimony of its witnesses by, for example, eliminating testimony that corroborates other testimony.[5]

6.      Despite these measures, the government simply cannot pare the case down to 17.5 hours and ensure that it will carry its heavy burden on all of the charges of the indictment.  At this point in the trial, the government has not completed its proof of racketeering acts, or the interrelated scheme the defendants committed, involving the hiring (without interviews) of "temporary" probation employees for a new electronic monitoring program.  The additional witnesses the

---

evidence, the government agreed to forgo proof of Counts Seven (involving Lisa Martin) and Twelve (involving Antonio Mataragas).

[4]For example, in relation to the Amy Parente hire (RA 16, 38(a), 38(b)), the government had planned to call approximately six witnesses to establish that she was not the most qualified candidate for the position but had gotten it because she was sponsored by her aunt, State Representative Marie Parente.  The government will now call only one witness, eliminating useful corroborating evidence.

[5]In trying to pare down the case, the government is of course hampered by the fact that it embarked on a course of presentation without knowing that a time limitation would be imposed mid-trial.  It is now too late to change this course of presentation effectively.

government hopes to call are listed in the attached addendum.  In the government's view, these witnesses will offer substantial proof of the charges, and their testimony will make it perfectly clear that the defendants' conduct was not isolated or done in good faith, but was part of a pattern of criminal conduct.  Two critical witnesses, the Chief Judge for Administration and Management and a legislative liaison, will alone take up a considerable amount of the time the Court has now said remains for the government's case.

7. If the Court does not reconsider its order which has prematurely reduced the number of days the government expected it would have to try its case, the government will be forced to eliminate evidence that is substantial proof of the racketeering charges and therefore of the RICO charges.  The government recognizes that the Court may "impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence," *United States v. Schneider,* 594 F.3d 1219, 1228 (10th Cir. 2010), but the need for case management should not interfere with the government's need to prosecute criminal activity and to carry its heavy burden of proof.  *Id.* at 1227.  *See also United States v. Colomb,* 419 F.3d 292, 299-300 (5th Cir. 2005) (although district court has the power to manage its affairs so as to achieve the orderly and expeditious disposition of cases, it must leave the government room to prosecute its case "without sacrificing significantly probative

evidence as a result of arbitrary restrictions that unduly constrict its ability to prosecute crimes"; thus, "it must consider the content of facially-relevant and admissible evidence" before invoking a measure that will result in the exclusion of that evidence); *United States v. Janati*, 374 F.3d 263, 273-274 (4th Cir. 2004) (district courts have broad discretion to manage trials, but government has broad discretion to prosecute crimes).  Thus, the Court may exclude particular pieces of evidence as unnecessarily cumulative (plainly, however, corroboration is key in every case), but it should not impose time limitations that exclude relevant, material evidence.  *Schneider*, 594 F.3d at 1229 (when there is an objection to the exclusion of evidence as the result of time limits, the record must show a proper basis or explanation by the district court for the exclusion) (citation omitted); *Colomb*, 419 F.3d at 303 (similar).  *See also Harris v. Chand*, 506 F.3d 1135, 1141 (8th Cir. 2007) (while "[t]rial courts are permitted to impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence," "[a]buse may occur when a court excludes "probative, noncumulative evidence simply because its introduction will cause delay'") (citation omitted).

8. Moreover, the Court's ability to manage the trial must take into account any difficulties inherent in the particular case before it, for example, the difficulties of proving that conduct was not the result of accident or good faith, but

rather part of a scheme to defraud or overarching pattern of criminal conduct. *Janati*, 374 F.3d at 273-274 (when the government prosecutes "a conspiracy involving a series of crimes" or is "faced with a difficult task of proving implied intent," it must be given "additional latitude" during trial to carry its burden of proof, all of which may suggest a "longer and more complex trial"); 374 F.3d at 275 (government has the right and burden to prove a conspiracy broader than individual overt acts, and the district court must give the government a reasonable opportunity to do so).   This admonition is especially pertinent here where the defendants have claimed that their actions are legally and socially acceptable and where, in the absence of evidence of multiple and repeated instances of questionable hiring, a juror may suspect that any particular hiring was done in good faith.  It is also especially pertinent given the difficultly generally in proving a RICO case.  In particular, the proof of two predicate acts may not alone establish a pattern of racketeering (one of the elements the government must prove) and, given the nature of the crime and the defendants' theory of the case, more than the absolute minimum of predicate acts is needed to ensure that the jury understands that any alleged racketeering activity is not a discreet occurrence but part of a larger sophisticated scheme.  That is, while proof of two predicate acts is necessary for a RICO conviction, it is not sufficient:  "[i]t is not the number of predicates but the relationship that they bear to each other or to some external organizing

principle that renders them a pattern." *United States v. Brandao,* 539 F.3d 44, 54-55 (1st Cir. 2008) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989)). As the Court of Appeals for the First Circuit said in *United States v. DeCologero*, 364 F.3d 12, 23 (1st Cir. 2004), a reduction in proof of RICO predicates may cause a jury to find that the government had proven the remaining acts but had not proved the necessary relationship that the excluded evidence would have supplied. Furthermore, in addition to meeting the difficulties of proving intent, a criminal pattern, and a scheme, the government has the right to place before the jury the full story, not only to establish the defendants' guilt but to convince the jury that a guilty verdict is the right result. *Old Chief v. United States,* 519 U.S. 172, 188 (1997).[6]

    9.    The government appreciates the Court's concern that it told the jury it would have the case by July 18. But trials are unpredictable and it is not unusual for them not to be completed as initially planned. As a practical matter, we believe it unlikely that the jury will have the case by July 18 even if the government does not receive more than the 17.5 hours to present its case. As the Court will have noticed, defense counsel's cross-examinations are lengthy; we believe that, at the

---

[6] In the extensive pre-trial hearings in this case, the defendants have alleged that the approximately 40 hires charged in the indictment were an insufficient sample in light of the scope of the hiring at the Probation Department between 2000 and 2010. Further reducing the government's ability to establish these hires will unfairly benefit the defendants and prejudice the government.

present pace of cross-examination, the defendants will exhaust their allotted time before the government exhausts its allotted time, and that the Court will eventually determine that it cannot prohibit the defendants from cross-examining the government's remaining witnesses.  *See Schneider*, 594 F.3d at 1229 (discussing serious constitutional issues if unreasonable limitations are imposed on the defendant's opportunity to defend against charges).  Moreover, although the defendants are not obligated to present a defense case, one or more of them might, and the defendants have, in fact, given notice that they may present a defense case. Given that the trial is unlikely to be completed by July 18, that date should not be used as a reason to prevent the jury from receiving relevant and important evidence of the charges against the defendants.  Nor should the combination of the July 18 end date and the defendants' right to cross-examine the government's witnesses be permitted to run the clock out on the government's case.

10.     Finally, to facilitate the prompt completion of the trial, the government suggests that we proceed to full trial days (9:00 a.m. to 4:00 p.m.), without further limiting the time the government has within which to try its case. Adding just two hours to the trial day will go a long way toward completing the trial without unnecessarily curtailing the government's case-in chief.

## CONCLUSION

For these reasons, the government respectfully moves this Court to

reconsider its order limiting the government to an additional 17.5 hours of evidence and allow the government to complete its presentation of its case-in-chief, subject to the Court's right to exclude any particular piece of evidence that it finds, after a proffer and discussion, to be irrelevant, otherwise inadmissible, or unnecessarily cumulative.

        Respectfully submitted,

        CARMEN M. ORTIZ
        United States Attorney

By:   /s/ Robert A. Fisher
       Fred M. Wyshak, Jr.
       Robert A. Fisher
       Karin M. Bell
       Assistant U.S. Attorneys

Date:  June 26, 2014

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

        /s/ Robert A. Fisher
        Robert A. Fisher
        Assistant United States Attorney

Date:  June 26, 2014