UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA      )
                              )
          v.                  )    CRIMINAL NO. 12-CR-40026-WGY
                              )
JOHN J. O'BRIEN et al.        )

<u>DEFENDANT'S REQUESTS FOR SPECIFIC SUPPLEMENTAL JURY INSTRUCTIONS</u>

     Pursuant to Fed. R. Crim. P. 30, defendant, John J. O'Brien, requests the Court to include the following specific supplemental instructions in its charge to the jury.

                    Respectfully submitted,

                    JOHN J. O'BRIEN
                    By his attorneys:

                    <u>/s/ William Fick</u>
                    Stylianus Sinnis
                    William Fick
                    Christine DeMaso
                    Federal Public Defender Office
                    51 Sleeper St., 5th Floor
                    Boston, MA  02210
                    617) 223-8061


**Certificate of Service**

     I, William W. Fick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 14, 2014.

                    /s/ William W. Fick

DEFENDANT'S REQUEST NUMBER 1

**CONSIDER ONLY THE CRIME CHARGED;**
**PATRONAGE, SPONSOR LISTS, POLICY MANUAL VIOLATIONS, AND POLITICAL**
**ACTIVITIES ARE NOT CRIMES**

Defendants request that the Court give the following standard instruction:

> You are only to consider the alleged crimes that are charged, not some other crime or bad conduct.  If you do not find beyond a reasonable doubt that the defendants committed the specific crimes charged, you must find them not guilty.

In addition to this standard instruction, the Court should repeat, in substance, its preliminary instruction that political "patronage" is not a crime.  In addition, the Court should also instruct specifically:

> An employment decision motivated by cronyism . . . is lawful, though perhaps unsavory. . . .[B]ackscratching, log-rolling, horse-trading, institutional politics, envy, nepotisim [and] spite are not illegal motivations for employment decisions.[1]

---

[1] *Zavatsky v. O'Brien*, 972 F. Supp. 2d 95, 99 (D. Mass. 2013) (dismissing civil lawsuit arising from Probation Department hiring allegations).

The court should also repeat its earlier instruction that violation of the AOTC Policies and Procedures is not, itself, a crime.

The Court should also repeat its earlier instruction that maintaining a so-called "sponsor list," or otherwise tracking recommendations, is not, itself, a crime.  The logical conclusion of this instruction is that it is neither criminal to keep nor to record and consider recommendations.  This Court should specifically instruct the jury that it is not Criminal to give a recommendation or to consider a recommendation when one has been made.

The Court should also repeat its earlier instructions that participation in the political process in various ways is not criminal, and, in fact, people have a protected constitutional right to participate in these activities. Specifically, the Court should instruct that it is not criminal to donate to politicians, to attend political fundraisers, or to otherwise support politicians.  On the contrary, these actions are constitutionally protected poltical speech.  Further, this Court should instruct that it is not criminal for an agency head to lobby the legislature for budget consideration or for legislation favorable to the agency.  It is normal and proper for agency heads to

-3-

interact with legislators in this manner.  Further, every citizen
in Massachusetts has the right to propose legislation.

Finally, the Court should instruct that:

> Lying about or attempting to cover up the practice of
> "patronage" is not necessarily a crime unless all of
> the elements of mail fraud are satisfied in connection
> with the specific charges in this case.  The defendants
> in this case are not charged with merely making false
> statements or covering up activity that, while
> potentially embarrassing, is otherwise lawful.

Discussion:

 *See, e.g., United States v. Pisani*, 773 F.3d 397, 410-11 (2d
Cir. 1985) (overturning mail fraud conviction where defendant
lied about and covered up the fact that he used campaign
contributions for personal use because doing so was not, itself,
illegal).

Indeed, the First Amendment protects even false and
misleading speech unless some separate, historically-recognized
exception such as, *e.g.*, fraud or defamation, is implicated. *See
generally United States v. Alvarez*, 132 S.Ct. 2537 (2012).

In particular, false or misleading speech related to
politics and governance is a necessary evil that has a long, if

-4-

tawdry, pedigree.  *See generally Brief of Amici Curiae Cato Institute and P.J. O'Rourke in support of Petitioners*, Susan B. Anthony List v. Driehaus, No. 13-193 (Supreme Court of the United States 2014).

> In modern times, "truthiness" – a "truth" asserted
> "from the gut" or because it "feels right," without
> regard to evidence or logic – is also a key part of
> political discourse.  It is difficult to imagine life
> without it, and our political discourse is weakened by
> Orwellian laws that try to prohibit it.

*Id*. at 3.  Notable examples from recent history include "I am not a crook"; "Mission accomplished"; "I did not have sexual relations with that woman"; "If you like your health plan you can keep it" and "Obamacare will create death panels."  *Id*.

DEFENDANT'S REQUEST NUMBER 2

## **VIOLATIONS OF SEQUESTRATION ORDER**

Before trial, the Court ordered that prospective witnesses be sequestered.  This means that a witness is not permitted to have contact with any other witness until both of them have testified. The purpose of this order is to ensure that one witness does not influence the manner in which another witness testifies.

In this case, you have heard that certain witnesses and FBI agents violated this order.  You should consider the testimony of these witnesses with particular caution.  You should consider whether interactions among witnesses during the trial may have influenced their testimony.

DEFENDANT'S REQUEST NUMBER 3

## **INTERPRETATION OF TRIAL COURT POLICIES AND PROCEDURES**

In you deliberations, you may decide that you need to interpret the meaning of Trial Court Polices and Procedures. You may also decide that you need to determine what the defendants reasonably could have understood trial court policies and procedures to be.

Because this is a criminal case, any ambiguity or lack of clarity in the Policies and Procedures must be resolved in favor of the innocence of the defendants.  This is what is referred to as the "rule of lenity."[2]

---

[2] The Rule of Lenity provides that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity. *Skilling v. United States*, 130 S.Ct. 2896, 2932 (2010).  "This interpretive guide is particularly appropriate" with regard to fraud statutes because "mail and wire fraud are predicate acts under the Racketeer Influenced and Corrupt Organizations Act." *Id.* (internal brackets and quotation marks omitted). Where, as here, mail fraud and racketeering charges are predicated on alleged misrepresentations concerning compliance with AOTC Policies and Procedures, the jury must be instructed on the Rule of Lenity since the interpretation of those Policies and Procedures, and the defendants' reasonable understanding of those same policies and procedures, are underlying issues of fact that the jury will have to decide.

In addition, you may consider any evidence you have heard about the customs and practices of the Trial Court in interpreting Polices and Procedures.[3]

---

[3] *See Providence Journal Co. v. Providence Newspaper Guild,* 271 F.3d 16, 21 (2001) ("The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial custom - the practices of the industry and the shop - is equally a part of the collective bargaining agreement although not expressed in it.") (internal citation omitted); *Quinn v. City of Boston*, 325 F.3d 18 (1st Cir. 2003) ("Custom and usage within an affected industry or workplace can be important aids to the construction of a contract or consent decree."); *cf. Dasey v. Anderson*, 304 F.3d 148, 259-60 (1st Cir. 2002)("[T]he Supreme Court established the principle that a constitutionally protected property interest in continued employment can be founded on an employer's institutional customs and practices.").

DEFENDANT'S REQUEST NUMBER 4

## **PRIOR INCONSISTENT STATEMENTS**

The testimony of a witness may be discredited or impeached by showing that he or she previously made statements which are inconsistent with his or her present testimony.  If a witness is shown to have given false statements concerning any material matter, you have a right to distrust such witness's testimony in other particulars.  You may reject all of the testimony of that witness or give it such credibility as you may think it deserves.

DEFENDANT'S REQUEST NUMBER 5

## **IMMUNIZED WITNESSES**

In this case, there has been testimony from witness who have received immunity from prosecution in connection with their testimony. The fact that a witness sought or obtained an immunity agreement or an immunity order does not necessarily mean that the witness committed any crime.  Nor does the fact that the government alleges that a witness is a so-called "unindicted co-conspirator" necessarily mean that the witness committed any crime.

While the government is allowed to enter into these kinds of agreements and to request immunity orders from the Court, you should consider the testimony of these individuals with particular caution.  While some people in this position are entirely truthful while testifying, they may have had reason to make up stories or exaggerate what others did because they want to help themselves.

In examining the testimony of these witnesses, in examining the manner and circumstances of their testimony, you may consider any agreements or promises the government has entered into or made with this witness to determine how those agreements or promises affect any testimony given.  More importantly, you may consider how the terms of any such agreements or promises reflect

upon the way a witness testified and the events to which a witness testified.

In other words, you may consider how the terms of a witness' agreement with the government may color his or her testimony; whether the witness  is motivated by a desire to please the government or whether a witness is motivated to tell the truth.

You may consider how a witness' hope of future benefits to him or her as a result of her understanding of any agreements may operate to enhance her testimony in a way favorable to the government.  You may also consider what effect any governmental promises or bargains as yet partially unfulfilled may operate to induce testimony favorable to the government and contrary to the interest of the defendants.

You may also consider whether any governmental ability to revoke previously provided benefits or deny previously  promised benefits may operate to induce testimony favorable to the government.

<u>DEFENDANT'S REQUEST NUMBER 6</u>

**OBJECTIONS, SIDEBARS, CROSS-EXAMINATION**

At times during the trial, you heard lawyers make objections to questions asked by other lawyers, and to answers by witnesses. It is a proper function of lawyers to make objections.  In objecting, a lawyer is requesting that I make a decision on a particular rule of law.  Do not draw from such objections, or from my rulings on the objections, any inferences about facts. The objections and my rulings related only to legal questions that I had to determine.  They should not influence your thinking about the facts.

Sidebar conferences between me and the lawyers are also a necessary part of the trial.  It is a proper function of the lawyers to request a sidebar to address certain legal issues. You should not speculate about what may have been discussed at the sidebar.

In addition, a lawyer is obligated to represent his or her client zealously.  The Constitution provides every accused with the right to confront the witnesses against him or her.  It is the job of the lawyers to do this, and it is proper for them to question witnesses aggressively, and with leading questions, on cross-examination.

Finally, you should not permit any opinions you may have formed about the lawyers, whether favorable or unfavorable, to

influence your thinking about the facts in this case.   You must decide this case impartially, based solely on the evidence.

DEFENDANT'S REQUEST NUMBER 7

**DEFENDANT'S DECISION NOT TO TESTIFY**

Under our Constitution, Mr. O'Brien, Ms. Tavares, and Mr. Burke have an absolute right not to testify.  In this case each has exercised that lawful right.  The fact that each has elected not to take the stand is in no way to be regarded by you as involving the questions of their innocence or his guilt.  No negative inference may be drawn from this decision.  Mr. O'Brien, Ms. Tavares, and Mr. Burke each have entered a plea of not guilty.  I instruct you emphatically that, in the jury room, you may <u>not</u> speculate about why each of them did not take the stand. You may not even discuss the fact that they did not testify.  I have told you why they did not testify.  They have each exercised this lawful right.

-14-

DEFENDANT'S REQUEST NUMBER 8

### **RACKETEERING INSTRUCTION**

On June 11, 2014, in response to a juror question, the court instructed the jury as to the elements required for the government to prove racketeering.  6/11/14 Tr. at 4-14.  The defendants objected to the court giving this instruction mid-trial, but now that this instruction has been given, the defendants request that the final instruction follow the mid-trial one.  The defendants conducted the trial in reliance on this instruction, and the jurors listened to the evidence with this instruction in mind.  Any difference would be confusing and prejudicial.