IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN J. O'BRIEN, ET AL. | No. 12-CR-40026-WGY |

## SUPPLEMENTAL MOTION FOR NEW TRIAL

The defendants, John O'Brien, Elizabeth Tavares, and William Burke, respectfully move pursuant to Fed. R. Crim. P. 33 for a new trial based on newly-discovered evidence. Specifically, defendants seek a new trial based on the discovery of evidence demonstrating that former Chief Justice of Administration and Management (CJAM) Robert Mulligan, the government's star witness and supposed "victim" of the charged mail fraud offenses, likely testified untruthfully about a material matter of dispute. The defendants have learned that spreadsheet lists of candidates for Court Officer positions maintained at the behest of CJA Mulligan and his Chief of Staff contained an obliquely-named column ("S/T") to record sponsorship by Speaker of the House Sal DiMasi and/or Senate President Robert Travaglini. *See* Affidavit of Estela Cordeiro attached as Exhibit A. This newly-discovered information conflicts with CJAM Mulligan's trial testimony. It demonstrates, notwithstanding his denials, that CJAM Mulligan engaged in patronage practices functionally indistinguishable from those alleged against the defendants. The custom and practice of the Trial Court permitted this notwithstanding arguably contrary language in written policies and procedures. O'Brien's hiring certifications were not false, O'Brien could not have intended to defraud, and CJAM Mulligan could not have relied detrimentally on those certifications. To allow a jury verdict to remain intact that is based, in part, on misleading or untruthful testimony would violate the defendants' constitutional right to a

...
...
...

fair trial. Accordingly, the interests of justice require that a new trial be granted.

## STANDARD

Rule 33 of the Federal Rules of Criminal Procedure allows a defendant to move for a new trial based on newly discovered evidence. *See United States v. Huddleston*, 194 F.3d 214, 218 (1st Cir. 1999). Such a motion must be granted if the defendant satisfies the following four requirements:

> (a) the evidence must have been unknown or unavailable to the defendant at the time of trial; (b) the defendant must have been duly diligent in attempting to unearth it; (c) the newly discovered evidence must be material; and (d) it must be such that its emergence probably would result in an acquittal upon retrial.

*Huddleston*, at 218. A court should grant a new trial based on the use of perjured testimony when the "fact and nature of the perjured testimony, along with the content of the corrected testimony, probably would result in acquittal upon retrial." *Id*. at 217.

## ARGUMENT

### A. The Evidence was Previously Unknown Despite the Defendants' Diligence.

The facts demonstrate that the defendants meet the first two prongs required under *Huddleston*. The defendants repeatedly attempted to gather information pertaining the hiring of court security personnel within the Massachusetts Trial Court. These efforts included multiple discovery requests, motions to compel, and the issuance of trial subpoenas.

The Chronology of events that led to the unearthing of the information contained in Ms. Cordeiro's affidavit began as far back as November 2012. Specifically, by letter dated November 21, 2012, defendants requested discovery including, *inter alia*:

> 13. All documents concerning recommendations, including without limitation by members of the legislature, for hiring by departments of the Trial Court other than the Probation Department.

[Dkt # 69.] [1]  On January 24, 2013, defendants filed a motion to Compel Discovery concerning various requests, including number 13 quoted above, with which the government failed or refused to comply. [Dkt # 84.] In its Opposition to this motion, the government stated:

> Defendants' Discovery Request No. 13
>
> The government is not in possession of material that would be deemed responsive to this request . . . .

[Dkt # 87.] The Court relied on the government's representation in its ruling on the Motion to Compel:

> *Requests (10), (11), (13), (14), (15), (16), (17), (21), and (22)*
>
> The government denies that it possesses information responsive to these requests. As such, the motion is DENIED as moot with respect to requests (10), (11), (13) through (17), (21), and (22).

[Dkt # 97 at 18-19.]

The government's representation, upon which the Court relied, was inaccurate. The government admitted this at a January 24, 2014 hearing on a subsequent motion to compel. *See* p. 114 of January 24, 2014, transcript (Dkt # 265). On that date, the government provided the defendants with certain lists and spreadsheets that were created in connection with the hiring of Massachusetts State Court Security Personnel.[2]  Among the lists produced by the government was an 11 x 17 inch spreadsheet ("The Spreadsheet") listing people who had applied for court

---

[1] Additional requests contained in defendants' discovery letter also should have triggered the production of the sponsor lists. *See* Dkt # 69, Request 16 and Request c.

[2] Furthermore, counsel for O'Brien subpoenaed the Administrative Office of the Trial Court for all sponsor lists pertaining to the hiring of court security personnel. The list produced by the government and attached to the Cordeiro affidavit also was produced in response to the subpoena, although, as noted *infra*, the defense had no information about authorship or the significance of the "S/T" column.

3

officer positions and various information pertaining to the candidates.  This is the same list attached to the Cordeiro affidavit.

The defendants were not provided with any information regarding who created the lists, how information ended up on the lists, or who had input into the creation of the lists. In an effort to learn more about various lists, including The Spreadsheet, defense counsel had conversations with counsel for Acting Head of Security Thomas Connolly and Daniel Sullivan, General Counsel for AOTC.  Notwithstanding these efforts, counsel were unable to learn who created the spreadsheets or who had input into the creation of the spreadsheets.

On July 1, 2014, late in the trial, counsel for O'Brien received a business record certification pertaining to the 11 x 17 inch spreadsheet.  The certification was signed by Estela Cordeiro.  Attorney Daniel Sullivan provided the certification to undersigned counsel.  The certification did not in any way indicate who was responsible for creating the spreadsheet, or suggest that Ms. Cordeiro had any role in doing so.

Following the jury verdict in this case, Estela Cordeiro reached out to counsel for O'Brien.  On September 16, 2014, counsel for O'Brien spoke with Ms. Cordeiro for the first time.  During that call, Ms. Cordeiro stated that she in fact created The Spreadsheet.  She further informed counsel that she received lists of candidates' names that were sponsored by either DiMasi or Travaglini.  She also told counsel that she received the DiMasi/Travaglini list from Acting Head of Security Thomas Connolly who told her the list came from CJAM Mulligan. She told counsel for O'Brien that she created a special column on the The Spreadsheet entitled "S/T" to reflect those candidates that had been sponsored by either DiMasi or Travaglini. Cordeiro Affidavit; ¶ 3. This was the first counsel learned that CJAM Mulligan personally kept

4

lists of candidates sponsored by high ranking state legislators and that he passed that information on to his subordinates.

Moreover, the efforts of undersigned counsel throughout the pendency of this case demonstrate the "overall diligence exhibited" by counsel for the defendants. *See United States v. McRae*, 702 F.3d 806, 841 (5th Cir. 2012) (diligence does not require "perfect hindsight" and complexity of case and counsels overall efforts factor into the determination of whether counsel was duly diligent in trying to unearth new evidence).

### B. The Cordeiro Affidavit Contains Material Evidence that Probably Would Have Resulted in an Acquittal.

CJAM Mulligan's testimony was central to the government's case. Not surprisingly, one of the central defenses presented at the trial was that CJAM Mulligan was fully aware of how the hiring process at the Probation Department worked because he employed a nearly identical hiring process when it came to hiring court security personnel. Specifically, the defendants argued that CJAM Mulligan was not materially deceived or defrauded by the certifications that were sent to him as part of the hiring process. To this end, the Court instructed the jury on at least two occasions that the government needed to prove beyond a reasonable doubt that CJAM Mulligan was defrauded by the certifications that he received as part of the hiring process. Absent such proof, the defendants could not be found guilty.

The defendants repeatedly cross-examined CJAM Mulligan on the hiring process he employed with regard to court security personnel. CJAM Mulligan repeatedly denied that members of the legislature influenced his hiring decisions. In particular, he testified that he did not keep lists of people who called regarding candidates. He testified that he ran a merit based hiring process when it came to hiring court security personnel. He denied knowledge of various

lists that contained the names of legislative sponsors.[3] The overall thrust of his testimony was that his hiring process was not influenced by the people who made recommendations.

However, information recently obtained by the defendants demonstrates that CJAM Mulligan did in fact kept lists of people recommended by those at the highest levels of the Massachusetts legislature and that he saw that those names were passed on to the Acting Head of Court Security to whom CJAM Mulligan had delegated hiring responsibilities. Specifically, Estela Cordeiro, an employee of the Massachusetts Trial Court, has stated in a sworn affidavit that she created The Spreadsheet that contains the names of hundreds of candidates for court security positions. Cordeiro Aff.; ¶ 2. The Spreadsheet includes columns that contained information regarding a candidate's telephone number, social security number, address, interview date, and court location.

In addition, the spreadsheet contained a column entitled "S/T." The "S/T" column reflected those candidates that had been recommended by either Speaker of the House Sal DiMasi ("D") or Senate President Travaglini ("T"). Cordeiro Aff. ¶ 3. Ms. Cordeiro further avers that she received a list of names of those candidates that had come recommended by either DiMasi or Travaglini. *Id*. at ¶ 4. She received the list of DiMasi/Travaglini sponsored candidates from then Acting Head of Security Thomas Connolly. *Id*. Mr. Connolly informed her that the lists of DiMasi/Travaglini candidates came directly from CJAM Mulligan. *Id*. at ¶ 5. Finally, she states that The Spreadsheet was provided to CJAM Mulligan and that some of

---

[3] Defense counsel had no occasion to ask CJAM Mulligan about The Spreadsheet because there was no obvious basis to believe it contained data concerning sponsorship by the Speaker of the Houser and/or Senate President. The obliquely-named "S/T" column effectively concealed that information and, in any event, without the testimony of Cordeiro the defense had no way to tie the document directly to CJAM Mulligan.

the individuals listed under the DiMasi/Travaglini column were hired as court security personnel. *Id*. at ¶ ¶ 6 & 8.

The import of the Cordeiro affidavit is clear: CJAM Mulligan received the names of candidates sponsored by the legislative leaders; he created a list of those candidates; provided the list to the head of Court Security; the information was put into a sponsor list under a separate heading and some of the individuals were hired. This information stands in stark contrast to CJAM Mulligan's testimony in which he denied that he made lists, denied that he kept track of who was calling, denied that he was influenced by legislative recommendations, and that he received only one telephone call from Senate President Travaglini. *See* Trial Transcript of Judge Mulligan (Docket Entries 555 & 556); July 2, 2014 Transcript page 65; July 8 Transcript pages 13, 16, 19 & 107.

The Cordeiro affidavit raises serious issues of doubt regarding the credibility and veracity of CJAM Mulligan's trial testimony. As the Supreme Court stated in *United States v. Mesarosh*, 352 U.S. 1. (1956), "the dignity of the United States Government will not permit the conviction of any person on tainted testimony." *Mesarosh*, 352 U.S. at 5. The circuit courts have also granted new trials when a conviction is based on tainted testimony. *See United States v. Chisum*, 436 F.2d 645 (9th Cir. 1971) (new trial granted after trial witnesses charged with perjury); *United States v. Young*, 17 F.3d 1201 (9th Cir. 1994) (new trial granted based on detective's false testimony as to where certain evidence was found); *United States v. McRae*, 702 F.3d 806 (5th Cir. 2012) (new trial granted where conviction rested on false police report).

This was a close case as evidenced by the length of the jury deliberations. CJAM Mulligan's testimony was integral to the government's case, which was premised on the allegation that Mulligan was defrauded by the certifications of compliance with the personnel

standards of the trial court. CJAM Mulligan's testimony that he did not have conversations with high ranking state officials regarding candidates for employment in the court security department and that he himself did not keep any lists or give any particular significance to such recommendations went a long way to supporting the government's argument that he was defrauded. The Cordeiro affidavit raises serious questions about the veracity of that testimony and requires a new trial.

Respectfully submitted,

JOHN J. O'OBRIEN
by his attorneys

/s/ Stylianus Sinnis
Stylianus Sinnis, Esq.
William W. Fick, Esq.
Christine DeMaso, Esq.
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
STELLIO_SINNIS@FD.ORG
WILLIAM_FICK@FD.ORG

ELIZABETH V. TAVARES
by her attorney,

/s/ R. Bradford Bailey
R. Bradford Bailey, Esq.

WILLIAM H. BURKE, III
by his attorney,

/s/ John Amabile
John Amabile, Esq.

**Certificate of Service**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 3, 2014.

      /s/ Stylianus Sinnis