UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 12-40026-WGY |
| | ) | |
| JOHN J. O'BRIEN, | ) | |
| ELIZABETH V. TAVARES, and | ) | |
| WILLIAM H. BURKE, III, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

I.   <u>Introduction</u>

On July 24, 2014, after a twelve-week jury trial, the defendants John O'Brien, Elizabeth Tavares and William Burke were convicted of racketeering conspiracy from in or before 2000 through April 2010. The defendants O'Brien and Tavares were also convicted of racketeering and four counts of mail fraud. The object crimes of the racketeering conspiracy were multiple violations of the mail fraud statute and Massachusetts bribery and illegal gratuity statutes. The jury found nineteen acts of racketeering proven, including ten acts of mail fraud and nine acts of illegal gratuities.

During the pendency of the conspiracy, O'Brien was the Commissioner of the Massachusetts Probation Department (MPD), and Tavares and Burke were Deputy Commissioners[1]. The gravamen of the racketeering conspiracy was that the defendants engaged in a scheme to defraud for the purpose of concealing the systemic patronage hiring system they operated in contravention of the Massachusetts Trial Court's policies and procedures, which

---

[1] The defendant Tavares was First Deputy Commissioner from 2008 through 2010, when she resigned.

required that hiring be merit-based. To effectuate the scheme to conceal the fact that employment and promotional decisions in the MPD were based upon patronage rather than merit, the defendants and their coconspirators devised a system that required the falsification of certain documents involved in the hiring process so that the process appeared to comply with the requirements of the Trial Court's *Policies and Procedures Manual.* The defendant O'Brien was convicted of providing illegal gratuities to the Speaker of the House of Representatives, Robert DeLeo, as part of this scheme.

Title 18, United States Code, Section 3553 establishes the factors to be considered by the Court in imposing a sentence. This statute, in combination with the United States Sentencing Guidelines, constitutes the federal sentencing regime. For the reasons set forth below, the government recommends that each defendant be sentenced to a period of incarceration as described later in this memorandum.

II. Argument

A. Nature, circumstances, and seriousness of the offense

The Court is fully familiar with the nature and circumstances of the offenses, having presided over the trial of this matter. Further, the United States has submitted a statement of relevant facts to the U.S. Probation Office which has been incorporated into the Probation Office's Presentence Investigation Report.

Suffice it to say that the defendants engaged in a decade-long practice of deception in order to support a discredited patronage hiring system that was specifically prohibited by the Massachusetts Trial Court. They did this to engender support from powerful politicians, primarily those in the legislature, who could impact the defendants' professional careers. They enlisted dozens of their subordinates to conduct sham interviews and to falsify scores and/or

rankings to create the appearance of compliance with the mandates of the Trial Court. The defendants intended that any review of their appointment decisions would be frustrated by the false documentation they caused to be created to support those decisions. In the process, they also caused subordinates to commit perjury in arbitration proceedings involving the MPD's hiring. Their ultimate goal was to defraud the Chief Judge for Administration and Management of the Massachusetts Trial Court, arbitrators from the American Association of Arbitration, thousands of applicants for jobs in the MPD, as well as anyone else who might question a hiring decision through litigation or some other means.

The defendants' actions caused significant damage. The defendants wasted thousands of hours of state employees' time and state employees' effort to conduct thousands of meaningless interviews in which the person to be hired was largely a foregone conclusion. The wasted time included the time of judges and high-ranking members of the MPD, and although the monetary value of this time is unknown and perhaps not subject to reliable accounting, it surely measures in the millions of dollars. As deplorable as the waste of public monies were the psychic costs to those forced to participate in a dishonest system and to those frustrated by the results of the time and effort they devoted to the rigged system. The harm caused to meritorious yet unsuccessful job candidates can likewise not be measured, nor can the general harm to the citizens of this Commonwealth whose tax dollars went to hire politicians' friends, constituents, and family members.

The defendants breached the public trust by implementing a system in which they falsely purported to hire employees based on "what you know" when, in actuality, they were hiring based on "who you know." Although society has attempted to rid itself of crony politics, the defendants apparently never received that message.

B. <u>Just punishment and adequate deterrence</u>

As discussed above, the harm to individuals impacted by the defendants' conduct is incalculable, in part because the public corruption in this case was so pervasive and enduring. However, public corruption in and of itself has such a corrosive effect on the public's confidence in government and their elected and appointed officials that its reach goes well beyond those individuals directly affected by it.

A severe sentence in this case is warranted to provide general deterrence, as well as to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment. The prosecution of this case was frequently met with general hostility and disbelief from many who benefitted from political patronage. The Court itself observed during the trial that many witnesses, including members of the legislature, simply refused to acknowledge that there is a point where patronage crosses into criminality. The Court's sentence must speak loudly to those in government who seek to engage in corrupt hiring practices because it serves their personal agendas. The Court's sentence must also inspire confidence in the general public that those who manipulate and corrupt our system of government to serve their personal interests will be properly punished. A lenient sentence will only serve to send the negative message that the system cannot police itself, and those who hold power in government are above the law.

C. <u>The defendants have not accepted responsibility nor shown remorse.</u>

The United States Sentencing Guidelines recognize the importance of acceptance of responsibility in fashioning an appropriate sentence. <u>See</u> U.S.S.G. §3E1.1 ("<u>Background.</u> The reduction of offense level provided by this section recognizes legitimate societal interests."). Although the defendants are not entitled to a reduction of their offense level pursuant to this section of the sentencing guidelines, the concept of acceptance of responsibility extends beyond

the mere calculation of a guidelines score. It is highly relevant to the issue of rehabilitation and the need for incarceration. In the case at bar, the defendants have failed to accept any responsibility. Instead, they have maintained their innocence, and appear to cling to a version of the facts of the case that has been rejected by this Court and the jury. Their refusal to express any remorse for misusing state employees and unfairly disappointing so many job applicants demands a meaningful sentence.

Particularly illustrative of the defendants' attitudes which persist to this day were statements they made during depositions conducted by Independent Counsel Paul Ware. (See depositions attached as Exhibits A and B filed separately under seal.) The sworn testimony of both defendants Tavares and Burke were, at best, equivocal and misleading if not outright perjurious. See Government's Omnibus Response To Defendants' Motions For Severance at pp. 3-11 (Dkt. #193) for an analysis of this testimony. (Copy attached as Exhibit C.) At times, Burke was somewhat more candid than Tavares, admitting that there was a *quid pro quo* relationship between probation and the legislature:

> Q. You understood, didn't you, that while it wasn't written down, the legislature was funding Probation generously because Probation was responding to legislative requests for hiring, among other things, isn't that right?
>
> A. I'd say yeah.
>
> Q. So you understood that one of the reasons Probation under the auspices of Jack O'Brien could get the funding it needed was that Jack O'Brien was being responsive to the hiring requests of legislative leaders?
>
> A. And judges.
>
> Q. But certainly legislative leaders, correct?
>
> A. Yeah, correct.

Ex. C at p.79.

Finally, the defendants were not beyond exploiting their appointment authority to serve their personal interests. O'Brien appointed his future son-in-law, Bryan Donovan, to an electronic monitoring position (ELMO) in 2008. O'Brien also appointed Office of Community Corrections (OCC) Director Stephen Price's nephew, Brendan Price, to an ELMO position while Price appointed O'Brien's daughter, Genevieve O'Brien, to an OCC position. As the evidence at trial demonstrated, an unnecessary ELMO monitoring center was created at the Springfield Superior Courthouse to provide jobs for Kathleen Petrolati, the wife of State Representative Thomas Petrolati, and for defendant Burke's daughter, Mindy.

III.     Government's sentencing recommendation

In light of the above, the United States respectfully recommends the Court impose a sentence in the applicable Guideline sentencing range for each defendant. Such sentences will serve the goals of 18 U.S.C. § 3553 and the United States Sentencing Guidelines.

The United States submits that the Total Offense Level for each defendant is 25, which provides for a sentence of 57-71 months (when the defendant falls within Criminal History Category I). The United States respectfully recommends that the defendant O'Brien be sentenced to a period of incarceration of 70 months and that the defendants Tavares and Burke be sentenced to periods of incarceration of 60 months. In the event that the Court determines

that the Total Offense Level for the defendants Burke and Tavares is not 25, the United States will recommend a sentence within the applicable guidelines range.

        Respectfully submitted,

        CARMEN M. ORTIZ
        United States Attorney

By:   /s/ Fred M. Wyshak, Jr.
        Fred M. Wyshak, Jr.
        Karin M. Bell
        Robert A. Fisher
        Assistant U.S. Attorneys

## **CERTIFICATE OF SERVICE**

     I, Fred M. Wyshak, Jr., Assistant United States Attorney, do hereby certify that this document, was filed on the above date through the ECF system which sends copies electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

        /s/ Fred M. Wyshak, Jr.
        Fred M. Wyshak, Jr.
        Assistant U.S. Attorney