UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 12-40026-WGY |
| | ) | |
| JOHN J. O'BRIEN, | ) | |
| ELIZABETH V. TAVARES, and | ) | |
| WILLIAM H. BURKE, III, | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

In their various sentencing submissions the defendants argue that the Government overcharged the defendants by charging racketeering and that their conduct falls outside the heartland of a racketeering case.

In fact, it is quite common that organizations such as businesses and government entities are utilized as the enterprise in a RICO prosecution. *United States v. DePeri*, 778 F.2d 963 (3d Cir. 1985) (Philadelphia Police Department), *cert. denied*, 475 U.S. 1109 (1986); *United States v. Alonso*, 740 F.2d 862, 870 (11th Cir. 1984) (Dade County Public Safety Department, Homicide Section), *cert. denied*, 469 U.S. 1166 (1985); *United States v. Ambrose*, 740 F.2d 505, 512 (7th Cir. 1984) (Chicago Police Department), *cert. denied*, 472 U.S. 1017 (1985); *United States v. Davis*, 707 F.2d 880, 882- 83 (6th Cir. 1983) (Sheriff's Office of Mahoning County, Ohio); *United States v. Lee Stoller Enterprise, Inc.*, 652F.2d1313, 1316-19 (7th Cir.) (Sheriff's Office of Madison County, Illinois), *cert. denied*, 454 U.S. 1082 (1981); *United States v. Bright*, 630 F.2d 804, 829 (5th Cir. 1980) (Sheriff's Office of DeSoto County, Mississippi); *United States v. Karas*, 624 F.2d 500, 504 (4th Cir. 1980) (Office of County Law Enforcement Officials), *cert. denied*, 449 U.S. 1078 (1981); *United States v. Baker*, 617 F.2d 1060, 1061 (4th Cir. 1980)

(Sheriff's Department of Wilson County, North Carolina); *United States v. Grzywacz*, 603 F.2d 682, 685-87 (7th Cir. 1979) (Police Department of Madison, Illinois), *cert. denied*, 446 U.S. 935 (1980); *United States v. Burnsed*, 566 F.2d 882 (4th Cir. 1977) (applying RICO without discussion to the Vice Squad of the Charleston, South Carolina Police Department), *cert. denied*, 434 U.S. 1077 (1978); *United States v. Brown*, 555 F.2d 407, 415-16 (5th Cir. 1977) (Macon, Georgia Municipal Police Department), *cert. denied*, 435 U.S. 904 (1978); *United States v. Cryan*, 490 F.Supp. 1234, 1239-44 (D.N.J.) (applying RICO to Sheriff's Office of Essex County, New Jersey, but limiting RICO culpability to only those defendants who actually committed or authorized the acts charged in the indictment), *aff'd*, 636 F.2d 1211 (3d Cir. 1980).  *United States v. Cianci*, 378 F.3d 71, 79-88 (1st Cir. 2004) (an association-in-fact of the office of Mayor of Providence, Rhode Island and other city agencies); *United States v. Blandford*, 33 F.3d 685, 703 (6th Cir.) (Office of the Representative for House District 14 together with individuals employed therein), *cert. denied*, 514 U.S. 1095 (1995); *United States v. McDade*, 28 F.3d 283, 295-96 (3d Cir.) (Congressman McDade and his Congressional offices in Washington, D.C. and in the 10th Congressional District of Pennsylvania), *cert. denied*, 514 U.S. 1003 (1995); *United States v. Freeman*, 6 F.3d 586, 596-97 (9th Cir. 1993) (Offices of the 49th Assembly District), *cert. denied*, 511 U.S. 1077 (1994); *United States v. Thompson*, 685 F.2d 993 (6th Cir. 1982) (en banc) (applying RICO to the Tennessee Governor's Office, but questioning the wisdom of not defining the enterprise in the indictment as a "group of individuals associated in fact that made use of the office of Governor of the State of Tennessee"), *cert. denied*, 459 U.S. 1072 (1983); *United States v. Long*, 651 F.2d 239, 241 (4th Cir.) (office of Senator in the South Carolina legislature), *cert. denied*, 454 U.S. 896 (1981); *United States v. Sisk*, 476 F.Supp. 1061, 1062-63 (M.D. Tenn. 1979), *aff'd*, 629 F.2d 1174 (6th Cir. 1980) (Tennessee Governor's Office), *cert. denied*, 449

U.S.1084 (1981); *see also United States v. Ganim*, 225 F.Supp.2d 145, 160-61 (D. Conn. 2002) (an association-in-fact of the office of Mayor of Bridgeport, Connecticut and other individuals); *United States v. Gillock*, 445 U.S. 360, 373 n.11 (1979) ("[o]f course, even a member of Congress would not be immune under the federal Speech or Debate Clause from prosecution for the acts which form the basis of the ... [RICO] charges here"); *but see* United States v. Mandel, 415 F.Supp. 997, 1020-22 (D. Md. 1976), *rev'd on other grounds*, 591 F.2d 1347 (4th Cir.), *aff'd on reh'g*, 602 F.2d 653 (4th Cir. 1979) (en banc) (State of Maryland not an "enterprise" for RICO purposes), *cert. denied*, 445 U.S. 961 (1980). *Mandel*, however, has been discredited by all courts that have considered the issue, including the Fourth Circuit. *See, e.g.*, *United States v. Warner*, 498 F.3d 666, 694-95 (7th Cir. 2007); *United States v. Angelilli*, 660F.2d23, 33 n.10 (2d Cir. 1981), *cert. denied*, 455 U.S. 945 (1982); *United States v. Long*, 651 F.2d 239, 241 (4th Cir.), *cert. denied*, 454 U.S. 896 (1981); *United States v. Clark*, 646 F.2d 1259, 1261-67 (8th Cir. 1981); *United States v. Altomare*, 625 F.2d 5, 7 n.7 (4th Cir. 1980); *United States v. Baker*, 617 F.2d 1060, 1061 (4th Cir. 1980); *see also United States v. Powell*, No. 87 CR 872-3 (N.D. Ill. February 27, 1988) (City of Chicago proper enterprise for purposes of RICO); *State of New York v. O'Hara*, 652 F.Supp. 1049 (W.D.N.Y. 1987) (in civil RICO suit, City of Niagara Falls proper enterprise); *Commonwealth v. Cianfrani*, 600 F.Supp. 1364 (E.D. Pa. 1985) (Pennsylvania Senate).

Furthermore, this case presents one of those anomolous situations where the monetary loss to the state for the conduct of the defendants is difficult to calculate.  As discussed in the Government's Sentencing Memorandum, there are several areas where the state certainly suffered a significant monetary loss such as the wasted time of highly paid state officials who engaged in the sham hiring process as well as the salaries paid to employees who were not the

most qualified candidates.[1]  Thus, contrary to the assertions of the defendants, the sentencing

guidelines for mail fraud, which rely upon the amount of loss to determine the appropriate

sentence, are not adequate to address the criminal conduct in this case. (U.S.S.G. §2B1.1(a)(1)

provides for a Base Offense Level of 7.)

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:     /s/ Fred M. Wyshak, Jr.
        Fred M. Wyshak, Jr.
        Karin M. Bell
        Robert A. Fisher
        Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Fred M. Wyshak, Jr.
FRED M. WYSHAK, JR.
Assistant U.S. Attorney

Date:    November, 12, 2014

---

[1]        Another area of costs to the state was not only unnecessary grievance and
arbitration proceedings which resulted from the patronage hiring system, but also litigation in
which the state paid damages. *See, e.g., Brown et al. v. O'Brien et al.*, Dkt.#SUC2007-03552,
which involved a sexual discrimination lawsuit involving James Rush, the father of state
Representative Michael Rush, who was appointed by the defendant O'Brien to the position of
Chief Probation Officer in West Roxbury District Court at the behest of then-Speaker of the
House Thomas Finneran.  First Deputy Commissioner John Cremens testified that Rush was not
the most qualified candidate for the CPO position and that he was given Rush's name by
O'Brien.  The jury awarded the plaintiffs $506,000.  *See Boston Globe* article attached as Exhibit
1.